**In re STERLING CHEMICALS, INC., Richard Crump, John Beaver, Resurgence Asset Management, L.L.C., Byron Haney, and Paul Rostek, Relators.**

**No. 14–08–00280–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 7, 2008.

Steve M. Zager, Murry B. Cohen, Ashley R. Adams, David C. Lawrence, Fred D. Raschke, Houston, Jack C. Brock, George W. Vie, III, Galveston, Glenn A. Ballard, Jr., Warren W. Harris, Jeffrey L. Oldham, Houston, for appellants.

Robert C. Hilliard, Kevin Grillo, Corpus Christi, for appellees.

Panel consists of Chief Justice HEDGES, Justice BOYCE, and Senior Justice HUDSON.[*]

**OPINION**

ADELE HEDGES, Chief Justice.

On April 10, 2008, relators, Sterling Chemicals, Inc., Richard Crump, John Beaver, Resurgence Asset Management, L.L.C. ("RAM"), Byron Haney, and Paul Rostek, filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221 (Vernon 2004); *see also* Tex. R.App. P. 52. Relators ask this court to compel the respondent[1] to enforce a forum-selection clause and dismiss the lawsuit filed by the real party in interest.

We hold that the trial court did not abuse its discretion in declining to enforce an ambiguous forum-selection clause.

Therefore, we deny the mandamus petition.

**BACKGROUND**

Sterling Chemicals, Inc. manufactures and sells acetic acid and plasticizers for its customers' use in the creation of other chemicals and products. The other relators consist of some of Sterling's officers and shareholders.[2]

On July 25, 2007, Sterling entered into a Memorandum of Understanding ("MOU") with real party in interest, Gulf Hydrogen and Energy, L.L.C. ("Gulf Hydrogen") concerning Gulf Hydrogen's proposed acquisition of Sterling. The MOU required that Gulf Hydrogen make three non-refundable deposits of $100,000, $1,000,000, and $10,000,000 into an escrow account. In return, Sterling granted Gulf Hydrogen an exclusivity period during which Sterling would not solicit other buyers. The parties later agreed that the exclusivity period was to terminate on March 1, 2008, at which time the proposed transaction would close.

The transaction had not been complete when the exclusivity period terminated on March 1. Three days later, Gulf Hydrogen sued relators, alleging that (1) Haney and RAM made misrepresentations to induce it to enter into the MOU and to deposit $1,100,000 in escrow; (2) relators refused to go forward with the transaction or caused the transaction not to be completed; and (3) Sterling refused to provide and execute closing documents, as required under the MOU, although Gulf Hydrogen had already tendered performance.

---

[*] Senior Justice Hudson sitting by assignment.

1. The Honorable Susan Criss, presiding judge of the 212th District Court of Galveston County.

2. Richard Crump is Sterling's president and CEO; John Beaver is its CFO; Paul Rostek is a Sterling senior vice president; RAM is an 83% shareholder in Sterling; and Byron Haney is a Sterling board member and a RAM director.

Shortly thereafter, relators requested that the trial court dismiss the lawsuit based on a forum-selection clause contained in the MOU. At a March 27 hearing, the trial court denied relators' motions to dismiss. In this original proceeding, relators assail those rulings as an abuse of the trial court's discretion.

## MANDAMUS STANDARD OF REVIEW

■■■ Mandamus relief is available to enforce forum-selection clauses. *In re AutoNation, Inc.*, 228 S.W.3d 663, 667 (Tex. 2007) (orig. proceeding). To be entitled to the extraordinary relief of a writ of mandamus, the relator must show that the trial court clearly abused its discretion, and it has no adequate remedy on appeal. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 259 (Tex.2008) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding).

## CONTRACT INTERPRETATION

■■■ The MOU clause we have been asked to enforce provides as follows:

All documentation in connection with the Proposed Transaction shall be governed by the internal laws of the State of Delaware, require waiver of jury trials, and consent to the State of Delaware, and the District of Delaware as being the exclusive forum for and having exclusive jurisdiction over any disputes.

The parties disagree about whether this clause applies to disputes arising from the MOU itself. In arguing that the clause unambiguously applies to the MOU as a matter of law, Sterling emphasizes the broad nature of the phrase "[a]ll documentation in connection with the Proposed Transaction." It contends that the MOU

is part of "all documentation;" therefore, the argument goes, the MOU's forum selection clause encompasses "any disputes" arising from the MOU itself. Gulf Hydrogen disagrees with this interpretation, noting that the parties expressly provided that the MOU later would be superseded by so-called Definitive Agreements:

The parties shall negotiate in good faith to finalize the definitive agreements to give effect to the Proposed Transaction (which will supersede this MOU) on mutually agreeable terms between [Gulf Hydrogen] and [Sterling], including customary terms and as further described in this MOU (the **"Definitive Agreements"**).[3]

Gulf Hydrogen contends that the MOU's forum selection clause is forward-looking and encompasses only disputes arising later after the contemplated Definitive Agreements have been created and executed. Thus, Gulf Hydrogen contends that (1) as a matter of law, the MOU's forum-selection clause is unambiguous and does not reach disputes arising from documents created before execution of the Definitive Agreements; or, in the alternative, that (2) the MOU's forum selection clause is ambiguous, cannot be interpreted as a matter of law, and cannot serve as a basis for mandamus at this stage of the litigation.

■■■ Whether a contract is ambiguous is a question of law for the court. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.2003). We determine whether the contract is ambiguous by looking at the contract as a whole, in light of the circumstances present when the parties entered into the contract. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex.2003). That the parties disagree about a contract's meaning does not render it ambiguous. *Hewlett–Packard Co. v. Benchmark Elecs., Inc.*, 142 S.W.3d 554,

---

**3.** Emphasis in original.

561 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). Rather, a contract is ambiguous when it is susceptible to more than one reasonable interpretation. *Frost Nat'l Bank v. L & F Distribs., Ltd.,* 165 S.W.3d 310, 312 (Tex.2005). An ambiguity in a contract may be either "patent" or "latent." *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex. 1995). A patent ambiguity is evident on the face of the contract, while a latent ambiguity arises when a contract unambiguous on its face is applied to the subject matter with which it deals, and an ambiguity appears by reason of some collateral matter. *Id.* When a contract is found to be ambiguous, the parties' intent is a determination for the fact finder. *Coker v. Coker,* 650 S.W.2d 391, 395 (Tex.1983). The court may conclude that a contract is ambiguous in the absence of such pleading by any party.[4] *Sage St. Assocs. v. Northdale Constr. Co.,* 863 S.W.2d 438, 445 (Tex. 1993).

We find no patent ambiguity in the forum-selection clause. However, when the clause is examined in light of two contemporaneous companion documents, inconsistencies between the three documents demonstrate the presence of a latent ambiguity. Specifically, this latent ambiguity becomes apparent when we examine certain provisions in the parties' confidentiality agreements and escrow agreements. When clauses in these agreements are analyzed and compared to the MOU's forum selection clause, it becomes apparent that Sterling's "all documentation" argument overreaches.

### A. Clauses in Confidentiality Agreements

Under the MOU, Gulf Hydrogen was permitted reasonable access to Sterling's personnel, property, contracts, books and records, and other such documents and data so that Gulf Hydrogen could "complete its due diligence with respect to the Proposed Transaction." The MOU also required that the parties execute one or more confidentiality agreements respecting Gulf Hydrogen's access to the documents and data. Accordingly, Sterling and Gulf Hydrogen entered into two confidentiality agreements. Both confidentiality agreements contained the following jurisdiction clause:

Section 17. Submission to Jurisdiction. Each party hereby (a) irrevocably submits to the *non-exclusive personal jurisdiction of any Texas state or federal court sitting in Harris County, Texas,* over *any claim or dispute arising out of or relating to this Agreement* and irrevocably agrees that all such claims and disputes may be heard and determined *in such Texas state or federal court, . . .*[5]

This clause contemplates that litigation of disputes relating to the confidentiality agreement will take place in Texas. Litigation in Texas is inconsistent with the MOU's forum selection clause, which contemplates litigation only in Delaware of "any disputes" arising from "[a]ll documentation in connection with the Proposed Transaction." Logically, the confidentiality agreements could be considered part of "[a]ll documentation in connection with the Proposed Transaction," and yet those agreements contemplate litigation of disputes concerning those agreements in a forum other than the exclusive forum chosen in the MOU's forum selection clause.[6]

---

**4.** Gulf Hydrogen did not plead ambiguity, and first raised the issue at the hearing.

**5.** Emphasis added.

**6.** Sterling attempts to remedy this inconsistency by arguing that the two jurisdiction

clauses do not conflict inasmuch as the Confidentiality Agreement's jurisdiction clause provides for *non-exclusive* jurisdiction in Harris County. However, expressly permitting the parties to litigate a dispute in a forum other than the "exclusive" jurisdiction, by defini-

This inconsistency gives rise to an ambiguity regarding the meaning of the phrases "all documentation" and "any disputes" in the MOU's forum selection clause as the exclusive jurisdiction for "any dispute" arising out of "[a]ll documentation in connection with the Proposed Transaction."

### B. Clauses in Escrow Agreements

A similar tension arises when the escrow agreements are considered. The MOU required Gulf Hydrogen to pay Sterling three non-refundable deposits of $100,000, $1,000,000, and $10,000,000. The MOU provided that the "Non–Refundable Deposits, along with any accrued interest, will be held in an escrow ("Escrow") to be established by [Sterling] as approved by [Gulf Hydrogen] and applied to the Purchase Price at Closing." Sterling and Gulf Hydrogen entered into two escrow agreements with regard to Gulf Hydrogen's $100,000 and $1,000,000 non-refundable deposits. Both escrow agreements contained the following jurisdiction clause:

8. <u>Governing Law and Counterparts</u>. This Agreement shall be governed by and construed in accordance with the laws of New York and may be executed in separate counterparts, all of which together shall be considered as but one document. Each party shall submit to the non-exclusive jurisdiction of the courts sitting in New York.

Like the confidentiality agreements, the escrow agreements could be considered "documentation in connection with the Proposed Transaction." Thus, if the sweeping language of the MOU clause is to include the MOU itself, as Sterling claims, it likewise encompasses disputes arising from the confidentiality and escrow agreements. Yet we cannot, as a matter of law,

reconcile Sterling's interpretation with the fact that the documents contain inconsistent jurisdiction provisions.

Relators contend that the confidentiality and escrow agreements should not be considered in our interpretation of the MOU clause because in each agreement, the jurisdiction clause applies only to *that* particular agreement. As a threshold matter, this contention arguably conflicts with the teaching that "instruments pertaining to the same transaction may be read together to ascertain the parties' intent." *Fort Worth Indep. Sch. Dist. v. Fort Worth*, 22 S.W.3d 831, 840 (Tex.2000). Furthermore, this argument would not explain why the escrow and confidentiality agreements should be included in "[a]ll documentation in connection with the Proposed Transaction," including the MOU, but have their own jurisdiction clauses. Relators have argued themselves into a double blind: they cannot maintain that the MOU is part of "[a]ll documentation" such that any claims regarding the MOU fall under the exclusive jurisdiction of the court in Delaware, while at the same time assert that the other agreements—which logically could also be considered "documentation in connection with the Proposed Transaction"—should not be considered in our interpretive context This tension cannot be eliminated by asserting that the clauses in the confidentiality and escrow agreements focus primarily on personal jurisdiction, while the MOU's clause focuses on forum. These clauses must be considered together because no purpose would be served by agreeing to the personal jurisdiction of a court located in a forum other than the exclusive forum selected by the parties.

tion, makes the "exclusive" jurisdiction *nonexclusive*. We are not redrafting the terms of the parties' agreements to treat the "exclusive" MOU forum-selection clause as nonexclusive. *See Fein v. R.P.H., Inc.,* 68 S.W.3d 260, 267 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). However, we cannot ignore an obvious inconsistency between two patently-unambiguous jurisdiction clauses.

This inconsistency among the three agreements creates a latent ambiguity in the "[a]ll documentation in connection with the Proposed Transaction" language from the MOU forum-selection clause. *See Wright v. Eckhardt*, 32 S.W.3d 891, 896 (Tex.App.-Corpus Christi 2000, no pet.).[7] Because it is susceptible to more than one reasonable interpretation, the MOU clause is ambiguous. *See Frost Nat'l Bank*, 165 S.W.3d at 312. The forum-selection clause reasonably may interpreted either as including the MOU itself, or as inapplicable to disputes arising before the subsequent execution of the Definitive Agreements that were to seal the transaction.

■ Given the ambiguity in the forum-selection clause, we cannot say that the trial court abused its discretion by denying relators' motions to dismiss. When a contract is ambiguous, the parties' intent is a determination left to the exclusive province of the fact finder. *Coker*, 650 S.W.2d at 395. We may not address disputed fact issues in an original mandamus proceeding. *Davenport v. Garcia*, 834 S.W.2d 4, 24 (Tex.1992) (orig. proceeding); *Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 714 (Tex.1990) (orig. proceeding) (op. on reh'g).

Relators have not established their entitlement to the extraordinary relief of a writ of mandamus. Accordingly, we deny relators' petition for writ of mandamus.

---

7. *See also South Plains Lamesa R.R., Ltd. v. Kitten Family Living Trust*, No. 07-06-00209-CV, 2008 WL 223847, at *3 (Tex.App.-Amarillo Jan. 28, 2008, pet. denied) (mem. op.) ("[T]o the extent that the two contracts contained inconsistent terms, we find that the two agreements, when construed together, created an ambiguity.").