Reversed and Remanded and Memorandum Opinion filed
September 10, 2009.

 

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00348-CV

____________

 

SOUTHERN CHEMICAL CORPORATION, Appellant

 

v.

 

CELANESE, LTD., Appellee

 



 

On Appeal from the
190th District Court

Harris County,
Texas

Trial Court Cause
No. 2007-25490

 



 

M E M O R
A N D U M  O P I N I O N

The parties to this appeal, which arises from dueling
summary-judgment motions, dispute the proper interpretation of a
methanol-supply contract=s term and termination provisions.  Although the contract
specifies an initial ten-year term that does not expire until the year 2015,
the appellant, Southern Chemical Corporation, contends another clause permits
early termination of the contract upon the giving of commercially reasonable
notice.  By contrast, Celanese, Ltd., the appellee, argues that neither party
may terminate the contract during the initial ten-year term except for specific
reasons not applicable here.








Because the parties are well-versed in the facts and the
legal issues are settled, we issue this memorandum opinion.  See Tex.
R. App. P. 47.4.  We conclude that the contract is susceptible to more than one
reasonable interpretation and is therefore ambiguous.  Accordingly, we reverse
the trial court=s judgment and remand this dispute to resolve the ambiguity.

                                                                             I.

                                                               Background

The facts germane to this appeal are not in dispute.  In
2003, the parties signed a confidential[1] AMethanol Sale and Purchase Agreement@ under which Celanese was required to
purchase all of its methanol needs exclusively from Southern Chemical for a
period of ten years beginning July 1, 2005.  That initial ten-year term will
automatically renew for an additional five years Aunless terminated as provided herein.@

A dispute arose when Southern Chemical attempted to terminate
the contract before the end of the initial term.  In April 2007, Southern
Chemical filed a declaratory-judgment action seeking a judicial determination
that the contract permits early termination during the initial term upon
commercially reasonable notice.  In response, Celanese contended the contract
does not provide for early termination during the initial ten-year period.

Both parties filed competing motions for summary judgment
advocating their respective interpretations of the contract.  The trial court
denied Southern Chemical=s motion and granted Celanese=s, ruling that:

1.         The term and termination
provisions are unambiguous;

2.         The initial term is mandatory
and cannot be terminated; and








3.         The contract allows the
parties to give notice of termination within three years of the end of the
initial term, but that provision does not affect the language mandating
completion of the initial ten-year term.

 

The summary judgment became final after the trial court resolved the last
disputed issue by denying Celanese=s request for attorneys= fees.  On appeal, Southern Chemical
contends that the contract unambiguously permits early termination and that the
trial court erred by reaching the opposite conclusion.

                                                                            II.

                                                      Standard of Review

When both sides request summary judgment and the trial court
grants one motion while denying the other, the appellate court must review the
summary-judgment evidence and decide all of the questions presented.  See FM
Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000). 
Stated differently, we are to render the judgment the trial court should have
rendered.  See id.  In considering the evidence presented by both sides,
we will apply the familiar summary-judgment standards, which we need not recite
here.  See Dolcefino v. Randolph, 19 S.W.3d 906, 916 (Tex. App.CHouston [14th Dist.] 2000, pet.
denied).








Naturally, our primary concern when interpreting a contract
is to ascertain and give effect to the parties= intent.  Perry Homes v. Cull,
258 S.W.3d 580, 606 (Tex. 2008).  We focus on the language used in the contract
because that is the best indication of the parties= intent.  See id.  We must
examine the entire contract in an effort to harmonize and effectuate all of its
provisions so that none are rendered meaningless.  Seagull Energy E & P,
Inc. v. Eland Energy, Inc., 207 S.W.3d 342, 345 (Tex. 2006).  Therefore, we
will not give controlling effect to any single provision; instead, we read all
of the provisions in light of the entire agreement.  See id. (citing Coker
v. Coker, 650 S.W.2d 391, 393 (Tex. 1983)).  We may not rewrite the parties= contract or add to its language
under the guise of interpretation.  Ramco Oil & Gas Ltd. v. Anglo-Dutch
(Tenge) L.L.C., 207 S.W.3d 801, 815 (Tex. App.CHouston [14th Dist.] 2006, pet.
denied).  Instead, we must enforce an agreement as written.  See id.

A court may determine that a contract is ambiguous even
though neither party makes that claim.  In re Sterling Chems., Inc., 261
S.W.3d 805, 809 (Tex. App.CHouston [14th Dist.] 2008, orig. proceeding) (citing Sage
St. Assocs. v. Northdale Constr. Co., 863 S.W.2d 438, 445 (Tex. 1993)). 
However, the parties= mere disagreement about interpretation does not render a
contract ambiguous.  See id. at 808.  Instead, a contract is ambiguous
if it is susceptible to more than one reasonable interpretation.  J.M.
Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003).  By contrast, a
contract that may be given a definite or certain meaning is not ambiguous and
will be construed as a matter of law.  See id.  Determining whether an
ambiguity exists is a question of law for the court.  See id.

                                                                           III.

                                                                    Analysis

The pertinent portions of the methanol-supply contract are as
follows:

4.         Term of Agreement.  This Agreement will begin on July 1, 2005 and will
continue for a period of ten (10) years.  Thereafter this Agreement will
continue for an additional five (5) year period unless terminated as provided
herein.

5.         Termination.

a)         By either PARTY giving written
notification of termination to the other PARTY not less than three (3) years
prior to the end of either the initial or additional term.








b)        If either party:  becomes
insolvent; is unable to pay its debts as they mature; makes a general
assignment for the benefit of creditors; has a receiver appointed for the whole
or any substantial part of its property, or becomes bankrupt, then the other party
may, in addition to all other rights and remedies provided by law, immediately
terminate this Agreement.

c)         At any time, either party may
terminate this Agreement because of a material breach if it is not corrected to
the reasonable satisfaction of the non-breaching party within a thirty (30) day
period after receipt of written notice of the breach.

 

The parties agree that sections 5(b) and 5(c) provide for early
termination Afor cause,@ that is, because of a party=s insolvency or uncured breach of the
contract.  However, they disagree about the scope and effect of the sentence
fragment that comprises section 5(a).

A.        Southern
Chemical=s Interpretation

Southern Chemical argues that section 5(a) confers the right
to cancel the contract Afor convenience.@  That is, the early-termination
right created by section 5(a) is not tethered to the occurrence of any
conditions such as breach or insolvency, and can be invoked simply by giving
notice of termination to the other party within the first seven years of the
initial term.  Under Southern Chemical=s interpretation, such notice would
enable a party to exit the contract after a commercially reasonable time.[2]









However, Southern Chemical=s reading of section 5(a) cannot be
harmonized with  the contract=s term provisions in the preceding paragraph 4.  That section
expressly permits a party to cancel the extended five-year term but not the
initial term.  Southern Chemical=s proposed interpretation would
require us to rewrite the first sentence of section 4 to read, AThis Agreement will begin on July 1,
2005 and will continue for a period of ten (10) years unless terminated as
provided herein.@  However, we may not rewrite, or add to the language of, the
parties= contract.  See Ramco Oil &
Gas Ltd., 207 S.W.3d at 815.  Nor may we conclude that section 5(a) trumps,
or controls over, the apparently mandatory terms of section 4.  See Seagull
Energy E & P, Inc., 207 S.W.3d at 345.

B.        Trial
Court=s Interpretation

The trial court construed the contract as mandating
the completion of the initial ten-year term.  However, that interpretation,
while consistent with section 4, makes no allowances for sections 5(b) and
5(c), which specifically authorize a party to exit the contract=s initial term under specific
circumstances.  If section 4 imposes an initial period that may not be
terminated for any reason, sections 5(b) and 5(c) lose any meaning.  We cannot
adopt a reading of a contract that renders portions of it meaningless.  See
J.M. Davidson, Inc., 128 S.W.3d at 229.

C.        Celanese=s Interpretation

Celanese suggests a reading of the contract that differs from
both Southern Chemical=s and the trial court=s interpretations.  While conceding
that sections 5(b) and 5(c) allow early termination for breach or insolvency,
Celanese contends that section 5(a) is not an Aearly termination@ provision but speaks only to the method
a party must follow in order to prevent the contract from automatically
renewing at the end of the initial term.

However, to reach that interpretation, we must disregard part
of section 5(a), which reads: ABy either PARTY giving written notification of termination to
the other PARTY not less than three (3) years prior to the end of either the
initial or additional term.@[3]  Under its own terms, the contract
automatically expires at the end of the additional term, if not before.  Thus,
there is no purpose for a clause that, under Celanese=s interpretation, would simply
explain how to terminate the additional term that will expire of its own
accord.  See id.

 








                                                                           IV.

                                                                Conclusion

In this case, section 5(a) is susceptible to at least two
reasonable interpretations.  Read in isolation, it seemingly authorizes either
party to withdraw from the methanol-supply contract for any reason during the
first seven years.  But considered in context with the contract=s term provisions, section 5(a) may
also be read as simply describing the method by which a party may prevent the
contract from automatically renewing at the end of the initial term.  

However, neither interpretation gives full effect to all of
the term and termination provisions without requiring a court to add to or
disregard other portions of the contract.  Thus, the contract may not be
assigned a definite or certain meaning and is therefore ambiguous.  See id. 
That contract ambiguity creates a fact issue as to the parties= intent that must be decided by a
fact-finder.  See Progressive County Mut. Ins. Co. v. Kelley, 284 S.W.3d
805, 808B09 (Tex. 2009); Columbia Gas Transmission
Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996).  Therefore,
the trial court erred by granting summary judgment.  See Kelley, 284
S.W.3d at 809.

Accordingly, we reverse the judgment of the trial court and
remand for further proceedings not inconsistent with this opinion.

 

 

/s/      Kent
C. Sullivan

Justice

 

 

Panel
consists of Justices Seymore, Brown, and Sullivan.









           [1] 
The parties agreed that the contract contains trade secrets, and the trial
court placed it under seal.  Therefore, we discuss the contract=s terms only to the limited extent necessary to
explain our resolution of this appeal.





           [2] 
Southern Chemical contends that Acommercially
reasonable notice@ is sixteen months.  However, because we hold that
section 5(a) does not unambiguously confer a right of early termination during
the initial term, we need not reach the subsidiary question of the amount of
notice that would be necessary or sufficient to effect such an early
termination.  See Tex. R. App. P. 47.1.





           [3] 
Emphasis added.