# NO. 12-14-00258-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DANNY VINES AND NANCY VINES, APPELLANTS* | § | *APPEAL FROM THE 217TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *RAY DURRETT, APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Danny and Nancy Vines appeal a judgment awarding $300,000.00 and attorney's fees to Ray Durrett, who sued Appellants for breach of contract and fraud.[1] In nine issues, Appellants contend that the trial court erred in rendering judgment on the jury's verdict in favor of Durrett. We affirm.

### BACKGROUND

Vines built a biomass plant in Lufkin, Texas, which was designed to use wood chips to generate electric power for sale commercially. Durrett's company supplied concrete for the construction of the plant. During their business interactions, Durrett and Vines discussed the possibility of Durrett's investing in a biomass plant.

Vines told Durrett that he was converting an existing plant in Greenville, Texas, to serve as a biomass plant to generate electricity for sale commercially. Vines offered Durrett an opportunity to invest in Greenville Energy, L.L.C., the company developing the Greenville biomass plant. As a result of their discussions, the parties signed the following letter agreement prepared by Vines's attorney.

---

[1] Although Nancy Vines signed the contract at the heart of this dispute, all dealings leading to this lawsuit were between Danny Vines and Ray Durrett. All references to "Vines" in this opinion will be to "Danny Vines" unless otherwise specified.

LETTER AGREEMENT

THE STATE OF TEXAS            §
                             §
COUNTY OF ANGELINA           §


       This letter agreement is entered into the __9__ day of February, 2010 by and between DANNY VINES and RAY DURRETT.

       DANNY VINES currently serves as President of GREENVILLE ENERGY, L.L.C.  The GREENVILLE ENERGY, L.L.C., project will ultimately result in the construction and operation of a biomass fueled electric generation plant within approximately eighteen (18) months from today.

       DANNY VINES owns twenty seven (27%) percentage points in the ownership of the GREENVILLE ENERGY, L.L.C. project.

       DANNY VINES has agreed to sell and RAY DURRETT has agreed to purchase three (3%) percentage points from DANNY VINES for a total sales price of Three Hundred Thousand and no/100 ($300,000.00) dollars.

       Both parties acknowledge that DANNY VINES has been paid the full amount of Three Hundred Thousand and no/100 ($300,000.00) dollars.  In consideration of this payment by RAY DURRETT, DANNY VINES agrees to pay RAY DURRETT any and all income received for or because of the three (3%) percentage points hereby sold to RAY DURRETT.  The three (3%) percentage point interest in the GREENVILLE ENERGY, L.L.C. project hereby purchased by RAY DURRETT shall remain in the name of DANNY VINES and all aspects of this agreement shall remain confidential.  NANCY VINES, as wife of DANNY VINES joins this agreement as a signatory to acknowledge and ratify the transfer of her community interest in the sale of the three percentage points in the GREENVILLE [ENERGY], L.L.C. project.

       Venue for any dispute as to the terms of this agreement shall be the District Court of Angelina County, Texas.

       Executed in multiple originals this the __9__ day of February, 2010.

                              /s/ Danny Vines
                       DANNY VINES, SELLER
                            /s/Nancy Vines
                       NANCY VINES, SELLER

                            /s/ Ray Durrett
                       RAY DURRETT, PURCHASER


Thereafter, natural gas prices declined, making the conversion of the plant economically unfeasible.  As a result, Greenville Energy, L.L.C. never converted the Greenville plant into a biomass facility capable of generating electricity for commercial sale.

2

Durrett later learned about the existence of a company agreement governing Greenville Energy, L.L.C. That agreement was in effect at the time he signed the letter agreement by which, he believed, he had purchased a three percent ownership interest in Greenville Energy, L.L.C. Under the terms of the company agreement, Vines could not transfer an ownership interest in Greenville Energy, L.L.C. without prior approval of its manager. Vines had not obtained the required approval.

Durrett sued Appellants for breach of contract and fraud. Appellants filed a motion to have Durrett's suit referred to arbitration based upon an arbitration clause in the Greenville Energy, L.L.C. agreement. The trial court denied the motion to arbitrate, and the case went to trial.

Following a jury trial, the trial court rendered judgment against Appellants for $300,000.00 with interest based on both the breach of contract and fraud causes of action. The judgment also awards $35,000.00 to Durrett for attorney's fees. This appeal followed.


## ARBITRATION

In their first issue, A,[2] Appellants contend that the trial court erred when it failed to grant their motion to refer the case to arbitration. They argue that the company agreement signed by Danny Vines and his four management partners in Greenville Energy, L.L.C. contained an arbitration clause that required Durrett's claims to be determined by an arbitrator rather than a court of law. They assert that, even though Durrett was not a signatory to the company agreement for Greenville Energy, L.L.C., Durrett's fraud claim referenced the agreement and therefore the arbitration clause applies.

## Applicable Law

Under "direct benefits estoppel," a nonsignatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding). The doctrine recognizes that a party may be estopped from asserting that the lack of his signature precludes enforcement of the contract's arbitration clause when he

---

[2] In their brief, Appellants set out a list of nine issues presented, designated by capital letters A through I. In the body of the brief, topics have been designated by capital letters A through L. The content of these paragraphs does not, in every instance, correspond with the letters of the topics set out in the list. For clarity, we will refer to the issues by the number that corresponds with the letter in the issue list.

has consistently maintained that other provisions of the same contract should be enforced to benefit him. ***Id***. A claim seeks a direct benefit from a contract, and arbitration can be compelled, if liability under the claim "arises solely from the contract or must be determined by reference to it." ***In re Weekley Homes, L.P.***, 180 S.W.3d 127, 131-32 (Tex. 2005) (orig. proceeding). By contrast, a claim does not seek a direct benefit from a contract, and arbitration cannot be compelled, if liability under the claim "arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law." ***In re Morgan Stanley & Co., Inc.***, 293 S.W.3d 182, 184 n.2 (Tex. 2009) (orig. proceeding).

**Discussion**

Appellants contend that it was necessary for Durrett to use the company agreement as evidence to prove his fraud theory. Therefore, they argue, Durrett's suit touched upon the company agreement and the court was required to send the case to arbitration pursuant to that agreement's broad arbitration provision. We disagree.

In this suit, three sets of duties were implicated. First is the breach of legal duty under common law fraud as alleged by Durrett. The second flowed from the February 9 letter agreement between Durrett and Appellants. The third set of duties are those imposed by the Greenville Energy, L.L.C. company agreement.

At common law, fraud refers to an act, omission, or concealment in breach of a legal duty, trust, or confidence justly imposed, when the breach causes injury to another or the taking of an unfair and unconscionable advantage. ***Jones v. Tex. Dep't of Protective & Regulatory Servs.***, 85 S.W.3d 483, 491 (Tex. App.—Austin 2002, pet. denied). Durrett's claim that Vines defrauded him alleged the breach of a common law duty, not a duty arising under Greenville Energy, L.L.C.'s company agreement. Durrett's suit does not rely on any terms of the company agreement, hinge on any rights arising from the company agreement, or seek to enforce any duty created by the agreement. Durrett sought the remedy of common law fraud allowed under Texas law. Because Durrett never sought to enforce any provisions of the company agreement, direct benefits estoppel does not apply to his suit against Appellants. ***In re Weekley Homes, L.P.***, 180 S.W.3d at 132. Accordingly, the trial court did not err in refusing to send the case to arbitration. We overrule Appellants' first issue.

4

In section H of their brief, Appellants assert that "this Court should construe the Letter Agreement *de novo*." There is no corresponding issue in the list of issues presented.

**Ambiguity in Letter Agreement**

In section H, Appellants contend that the February 9, 2010 letter agreement was an unambiguous contract. They argue that the only construction possible is that Durrett purchased a three percent net profits interest in Greenville Energy, L.L.C. Thus, they further contend that Durrett received an interest only in the income received by Vines. In section H, Appellants do not identify or argue about any error made by the trial court. We will construe section H as an argument that, because they believe the contract to be unambiguous, the trial court erred in submitting the breach of contract issue to the jury.

### Applicable Law

Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered. ***Enterprise Leasing Co. of Houston v. Barrios***, 156 S.W.3d 547, 549 (Tex. 2004) (per curiam). If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous and the court will construe the contract as a matter of law. *Id*. On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent. ***J. M. Davidson, Inc. v. Webster***, 128 S.W.3d 223, 229 (Tex. 2003). We must decide whether there is more than one reasonable interpretation of this contract such that a fact issue was created concerning the parties' intent. *See **Columbia Gas Transmission Corp. v. New Ulm Gas, LTD.***, 940 S.W.2d 587, 589 (Tex. 1996).

A patent ambiguity is evident on the face of the contract. ***In re Sterling Chems., Inc.***, 261 S.W.3d 805, 809 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). Only after a contract is found to be ambiguous may parol evidence be admitted for the purpose of ascertaining the true intentions of the parties expressed in the contract. ***Friendswood Dev. Co. v. McDade + Co***., 926 S.W.2d 280, 283 (Tex. 1996) (per curiam). The trier of fact must resolve the ambiguity by determining the true intent of the parties. ***Coker v. Coker***, 650 S.W.2d 391, 394-95 (Tex. 1983).

## Discussion

In Appellants' live pleading at the time of trial, they contended that the contract was ambiguous and that its meaning must be resolved by the finder of fact. According to the letter agreement quoted above, Vines owned twenty-seven percent of Greenville Energy, L.L.C. The next sentence states that he was selling three percentage points to Durrett for $300,000.00. These two sentences appear to indicate that Vines was selling an ownership interest in Greenville Energy, L.L.C. to Durrett.

However, two later sentences state that in consideration of Durrett's payment, Vines was agreeing to pay him any and all income received for or because of the three percentage points sold to Durrett. The next sentence states that the three percentage points interest would remain in the name of Vines and would remain confidential. This indicates that perhaps Vines was conveying a net profits interest, rather than an ownership interest, to Durrett. This is a patent ambiguity because it is evident on the face of the contract. *See **In re Sterling Chems., Inc.***, 261 S.W.3d at 809. Based upon this patent ambiguity, the trial court implicitly determined, as a question of law, that the letter agreement was ambiguous and therefore should be interpreted by the admission of parol evidence.

Both Vines's accountant, Melvin Todd, and his attorney, Jimmy Cassels, testified they initially believed the contract was for a three percent ownership interest. But they also testified that, upon further reflection, they believed the contract was unclear and the issue should be submitted to the jury for a fact determination. Durrett strongly maintained that he was buying a three percent ownership interest. Vines consistently asserted that he was selling Durrett only a three percent net profits interest. We hold that the trial court properly submitted the breach of contract issue to the jury for determination. *See **Webster***, 128 S.W.3d at 229. Assuming this is the complaint presented by section H, we overrule section H.

## Vines's Income

In their seventh issue, G on the list, argued in section J, Appellants contend that there could have been no breach of contract because the agreement included a condition precedent that there be a profit, and that condition was never met. In their eighth issue, H on the list, argued in section K, they contend that there was a complete absence of evidence of a breach of contract because there is no evidence that Vines received any income from the project. Because these two issues are intertwined, we will consider them together.

6

**Standard of Review**

When an appellant attacks the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof, the appellant must demonstrate on appeal that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). In determining whether there is no evidence of probative force to support a jury's finding, all the record evidence must be considered in the light most favorable to the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in that party's favor. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Id*. In a legal sufficiency or no evidence review, we determine whether the evidence would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

**Applicable Law**

The elements of a breach of contract claim are (1) the existence of a valid contract between plaintiff and defendant; (2) the plaintiff's performance or tender of performance; (3) the defendant's breach of the contract; and (4) the plaintiff's damage as a result of the breach. *Gaspar v. Lawnpro, Inc*., 372 S.W.3d 754, 757 (Tex. App.—Dallas 2012, no pet.). A breach of contract occurs when a party fails to perform an act it has explicitly or impliedly promised to perform. *Id*. A breach is determined by comparing the terms of a contract with the actions of the alleged breaching party. *Enron Oil & Gas Co. v. Joffrion*, 116 S.W.3d 215, 221 (Tex. App.—Tyler 2003, no pet.). Conditions precedent to an obligation to perform are those acts or events, which occurred subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976).

**Discussion**

Appellants contend that, pursuant to the letter agreement, Durrett purchased a three percent interest in profits. Accordingly, the argument continues, there could have been no breach of contract because they never realized a profit on the Greenville biomass property.

Durrett contends that the terms of the contract were breached when Vines refused to convey a three percent interest in Greenville Energy, L.L.C. to him.

Knowing that the Greenville plant never opened and never generated income, the jury determined that Vines failed to comply with the agreement. Accordingly, the jury rejected Vines's contention that he was selling only a three percent net profits interest. Therefore, receipt of a profit by Vines is not a condition precedent to his performance under the contract.

The jury interpreted the agreement as a sale of a three percent ownership interest. Thus, the fact that there is no evidence that Vines received any income from the project is irrelevant. The ownership interest would have allowed Durrett to own assets that the company had. Further, he would have been entitled, when and if the company ever began to operate, to benefit from any future growth of the company. Additionally, as a part owner of the company, he would be entitled to share in the government subsidies and tax breaks that Vines had discussed. It is undisputed that Vines did not convey an interest in Greenville Energy, L.L.C. to Durrett. Instead, he conveyed his interest in the company to a third party sometime after signing the agreement with Durrett. Vines's failure to convey to Durrett that which the jury determined Durrett was entitled to under the terms of the contract, a three percent ownership interest, constituted a breach of the contract. The evidence is legally sufficient to show a breach of contract. *See Gaspar*, 372 S.W.3d at 757. Accordingly, the trial court did not err in rendering judgment based on Vines's breaching the terms of the contract. *See Havner*, 953 S.W.2d at 711. Appellants' seventh and eighth issues are overruled.

## Eighteen Month Provision

In their sixth issue, F on the issue list, argued in section I, Appellants assert that the trial court erred by treating a recital and an operative clause equally. They argue that the statement in the letter agreement that the plant would open within eighteen months of signing that agreement is a recital, not an enforceable, operative clause. Due to our disposition of issues seven and eight, the question of whether the eighteen month provision is an operative clause is moot. We need not reach issue six. *See* TEX. R. APP. P. 47.1.

## ATTORNEY'S FEES

In their ninth issue, I on the issue list, and argued in section L, Appellants contend that the trial court improperly awarded attorney's fees because Durrett did not segregate his

attorney's fees between his breach of contract and fraud claims. Durrett contends that Appellants waived this issue because they failed to object to Durrett's attorney's testimony of his unsegregated attorney's fees. We agree with Durrett.

When a lawsuit involves multiple claims, the proponent of attorney's fees must segregate recoverable fees from those incurred on claims for which fees are not recoverable. ***Tony Gullo Motors I, L.P. v. Chapa***, 212 S.W.3d 299, 311 (Tex. 2006). Or, the party seeking to recover attorney's fees bears the burden of demonstrating that segregation is not required. ***Id***. However, a party waives any error arising from possibly awarding nonrecoverable fees when the complaining party does not object to failure to segregate between legal services for which fees are properly recoverable and those for which no recovery of fees is authorized. ***Green Int'l, Inc. v. Solis***, 951 S.W.2d 384, 389 (Tex. 1997).

Here, Appellants not only failed to object to the testimony of unsegregated attorney's fees, but also failed to object to the attorney's fees question in the jury charge. ***Id***. Accordingly, Appellants waived this issue. We overrule Appellants' ninth issue.

## DISPOSITION

Because we have upheld the trial court's judgment based on Durrett's breach of contract cause of action, we need not address issues two, three, four, and five, which concern Durrett's fraud cause of action. TEX. R. APP. P. 47.1.

We *affirm* the judgment of the trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered December 30, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

9



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 30, 2015**

**NO. 12-14-00258-CV**

**DANNY VINES AND NANCY VINES,**
Appellants
V.
**RAY DURRETT,**
Appellee

Appeal from the 217th District Court

of Angelina County, Texas (Tr.Ct.No. CV-01674-12-08)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellants, **DANNY VINES AND NANCY VINES,** for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*