**PROGRESSIVE COUNTY MUTUAL
INSURANCE COMPANY,
Petitioner,**

v.

**Regan KELLEY, Respondent.**

No. 08–0073.

Supreme Court of Texas.

March 27, 2009.

Rehearing Denied July 3, 2009.

Mark Lapidus, Megan Lynette Knudsen, Burck Lapidus & Lanza, P.C., Houston, for Petitioner.

Jay B. Goss, Bruchez Goss Thornton Meronoff & Hawthorne, Bryan, for Respondent.

PER CURIAM.

In this case, we consider whether two documents issued by an insurance company constitute two separate insurance policies or a single policy. We hold that this

is a fact question and remand to the trial court.

Regan Kelley was struck by a car while riding her horse. Medical expenses for her injuries are alleged to have exceeded $1 million. After receiving $100,000 in benefits from the motorist's insurer, Kelley made a claim with Progressive County Mutual Insurance Company ("Progressive") for underinsured benefits under a policy issued to her parents, which also covered Kelley. At the time of the accident, Kelley was an adult living with her parents. Progressive paid the policy limit of $500,025. To cover the remaining damages, Kelley then made a claim under an alleged second policy with a limit of $500,025, also issued by Progressive. At the time of the accident, Progressive insured five of the Kelleys' vehicles. Four vehicles were listed on a two-page document, and the fifth was listed on a separate two-page document. However, the documents had separate policy numbers. Nevertheless, Progressive denied there was a second policy and refused to make any additional payments.

Kelley sued Progressive for breach of contract and Insurance Code violations, while Progressive sought a declaratory judgment requiring it to pay the maximum policy limit amount under only one policy. The suits were consolidated, and both parties filed motions for summary judgment, presenting two issues: (1) whether Progressive issued one or two policies, and (2) if two policies, whether Progressive's "Two or More Auto Policies" anti-stacking provision,[1] found within each policy, limited recovery to one policy's maximum limits. The trial court granted Progressive's motion and denied Kelley's motion, without specifying on which ground. The court of appeals reversed and rendered judgment in favor of Kelley, holding that (1) Kelley established as a matter of law that Progressive issued two separate policies, and (2) Progressive's "Two or More Auto Policies" provision violated public policy, as it had the same effect as an "other insurance" provision previously struck down by this Court. 285 S.W.3d at 8; *e.g., Amer. Liberty Ins. Co. v. Ranzau,* 481 S.W.2d 793, 797 (Tex.1972). 285 S.W.3d 1. Thus, the court of appeals held that Kelley was entitled to collect under the second policy to the extent of her actual damages. 285 S.W.3d at 9. Progressive appeals to this Court, arguing that the trial court's judgment should be reinstated.

■ "When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented and render the judgment the trial court should have rendered." *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.,* 136 S.W.3d 643, 648 (Tex.2004) (citations omitted). "When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious." *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000) (citations omitted).

■ Progressive argues it is entitled to judgment as a matter of law because it met its obligations under the single policy by paying its maximum limits, or alterna-

1. This provision provides:
   **TWO OR MORE AUTO POLICIES**
   If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under one policy.

tively, that the "Two or More Auto Policies" provision limits Kelley's recovery to a single policy. It argues that the documents clearly and unambiguously demonstrate Progressive only issued one policy to the Kelleys with a maximum coverage of $500,025. In support, Progressive directs the Court's attention to the multi-car discount reflected in the second document, and the affidavit of Debra Henry, Progressive's Litigation Underwriting Specialist, who explained that Progressive has specific procedures for "5+ Car" policies. According to Henry, "5+ Car" policies are split into two pages because Progressive's computer software only allows four vehicles per page, and that the two separate policy numbers generated are a product of Progressive's computer program, not an indication of two separate policies. Henry stated that had there been two policies, Progressive could have charged Kelley two policy fees, rather than the one that it did charge. Also, Henry stated that the multi-car discount reflected on the second document was applicable only because the car listed was the fifth overall under the single policy, and that this discount would not have been available if the car was covered under its own distinct policy. Conversely, Kelley argues there is no fact question as to whether two policies were issued, and that refusing to stack the two policies in these circumstances is prohibited under Texas law. In support, Kelley points to the separate policy numbers and premiums on each document, as well as Progressive's own "Product & Underwriting Guide."

██ Although this question deals with the interaction of two documents, the rules of construction for insurance contracts apply.[2] The starting point of this analysis is the instrument itself. *See Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983) ("If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law."). Here, the written instrument consists of two pages, and standing alone, contains the information necessary to be an insurance policy. It makes no reference to another related document or policy. In the top right corner, the document states "Page 1 of 2" and "Page 2 of 2," respectively, indicating that those are the only two pages related to that policy. These characteristics suggest the document is a single policy. However, Progressive urges the Court to consider its Product & Underwriting Guide and Henry's affidavit to explain the two documents. Extrinsic evidence is not admissible for the purpose of creating an ambiguity. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995) (per curiam) (citations omitted). But here, the document does reflect some ambiguity. The reference to the "multi-car discount" on the second document, which covers only one car, creates some ambiguity. *See Coker,* 650 S.W.2d at 394 ("A contract ... is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning."). Also at issue here is latent ambiguity, which arises "when a contract which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter." *Nat'l Union Fire Ins.,* 907 S.W.2d at 520. Here, the surrounding circumstances—the existence of the two documents—creates a latent ambiguity as to the intent of the parties. Thus, we will consider extrinsic evidence, includ-

---

**2.** The meaning of the first document/policy, which lists four cars, is not at issue because Progressive has already paid the limits on that policy. The question before the Court is whether the second document/policy is independent of the first.

ing the content of the first document. A review of the two documents together shows that each has a different policy number, policy period, premium, and listed drivers. Also, the first document reflects that it was modified more recently than the second. However, the coverage amounts and deductibles are the same in each document.

Henry addressed these discrepancies, explaining that Progressive's computer program allows only four vehicles per page, so the fifth car must be listed on a separate page. While this explanation may indicate Progressive issued a single policy, the fact that a new policy number was generated for the second document does not. Also, Henry's affidavit and Progressive's own "Product & Underwriting Guide" conflict at times. Henry states that Kelley would have been required to pay an additional policy fee if there was a second policy, whereas the Guide states:

> ProRater can only accept four vehicles **per policy.** You will therefore need to **split policies** for five or more vehicles. When you generate a quote, ProRater will prompt you to indicate whether it is for the **second policy** of a "5 + car" policy. Answering "Yes" to this question will generate a multi-car discount, **and will prevent a policy fee and installment fee from being charged on the second policy.** Only answer "Yes" when quoting the second policy. The primary policy should be answered "No."

(emphasis added). As Progressive urges, this "second policy" could reasonably be read to refer to the second page or provision of the original policy, but it could also reasonably be read to refer to an additional independent policy. The Guide also refers repeatedly to a primary, secondary, and second policy, implying there is more than one policy involved here. Henry's

affidavit, taken together with the Guide, does little to resolve the ambiguity as to whether the second document is a separate policy. That a discount was given for a fifth car could also reasonably be construed either way—Progressive may want to reward a continuing customer by offering discounts on new, additional policies in the same way it would want to offer discounts on additional coverage under the same policy. Further, while it may seem reasonable for a computer program to carry over policy information onto an additional page, the fact that each document contains a separate policy number suggests they are separate, independent policies. This evidence is sufficient to raise a fact issue as to whether Progressive issued two policies, but it falls short of establishing as a matter of law only one policy was issued. For these reasons, we hold that the documents are ambiguous as to whether one or two policies were issued.

■ Kelley argues that neither party claimed the contract was ambiguous. But whether a contract is ambiguous is a question of law to be decided by the Court. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex.2003); *see also Sage St. Assocs. v. Northdale Constr. Co.,* 863 S.W.2d 438, 445 (Tex.1993) (holding that a court can decide a contract is ambiguous on its own motion). We have said that in an insurance contract, where a provision is subject to two reasonable interpretations, we will adopt the interpretation that favors the insured. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., Inc.,* 811 S.W.2d 552, 555 (Tex.1991) (citations omitted). Here, we are not interpreting a particular exclusion or provision within an insurance policy, *see, e.g., Fiess v. State Farm Lloyds,* 202 S.W.3d 744, 746 (Tex.2006); rather, we are determining whether two documents amount to a single or separate policies. After reviewing the face of the documents and extrinsic evi-

dence, we hold that the documents are ambiguous, and therefore, a fact finder should resolve the meaning. *See J.M. Davidson,* 128 S.W.3d at 230–31; *Coker,* 650 S.W.2d at 394 ("When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue.").[3]  Therefore, without hearing argument, we reverse the court of appeals judgment and remand to the trial court for further proceedings consistent with this opinion.  TEX.R.APP. P. 59.1.[4]

---

**3.**  The record reflects that Progressive requested a jury trial and that Kelley argued, during summary judgment, that the issue of whether there is two policies may be a fact issue.

**4.**  Because the validity of the anti-stacking provision is continent on a finding that Progressive issued two policies, we do not address it at this time.