

# NUMBER 13-09-00422-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**CITY OF SAN JUAN,**                                          **Appellant,**

**v.**

**CITY OF PHARR,**                                               **Appellee.**

---

### On appeal from the 275th District Court
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez, and Benavides[1]
### Memorandum Opinion by Justice Rodriguez

---

[1] The Honorable Linda Reyna Yañez, former Justice of this Court, did not participate in this opinion because her term of office expired on December 31, 2010; therefore, this case, which was argued before the panel on October 28, 2010, will be decided by the two remaining justices on the panel. *See* TEX. R. APP. P. 41.1(b) ("After argument, if for any reason a member of the panel cannot participate in deciding a case, the case may be decided by the two remaining justices.").

In this extraterritorial jurisdiction (ETJ) case,[2] appellant City of San Juan sued appellee City of Pharr for breach of contract and sought a declaratory judgment regarding the validity of certain annexation ordinances and the effect of those ordinances on San Juan's ETJ. Pharr counterclaimed for declaratory judgments regarding its own ETJ. Both parties filed motions for summary judgment on their claims, and the trial court granted the motion filed by Pharr and denied the motion filed by San Juan. By three issues, San Juan argues that the trial court erred in: (1) denying San Juan's motion for summary judgment on the validity and effect of certain annexation ordinances passed by San Juan in the 1990s because Pharr did not timely challenge the ordinances and therefore consented to their validity; and granting Pharr's motion for summary judgment on the validity and effect of certain annexation ordinances passed by Pharr in the 2000s because (2) San Juan's 1990s annexation ordinances, to which Pharr allegedly consented, also extended San Juan's ETJ, thus precluding the later annexations by Pharr, and (3) alternatively, a 1983 agreement between San Juan and Pharr prohibited the expansion of Pharr's city limits and ETJ beyond a certain boundary outlined in the agreement. We affirm, in part, and reverse and render, in part.

---

[2] "The extraterritorial jurisdiction of a municipality is the unincorporated area that is contiguous to the corporate boundaries of the municipality" and that extends a statutorily-defined distance from those boundaries depending on the population of the municipality. TEX. LOC. GOV'T CODE ANN. § 42.021 (West 2008). The purpose of extraterritorial jurisdiction is "to promote and protect the general health, safety, and welfare of persons residing in and adjacent to the municipalities." Id. § 42.001 (West 2008).

# I. FACTUAL BACKGROUND[3]

The evidence shows that San Juan and Pharr are adjacent municipalities in the Texas Rio Grande Valley; San Juan is situated to the east of Pharr. In 1983, San Juan and Pharr entered into an agreement governing the expansion of the cities' ETJs. The agreement provided that I Road, a major thoroughfare that runs north and south between the cities, would serve as the boundary between San Juan and Pharr's ETJs. Under the agreement, Pharr's ETJ could not expand east of I Road, and San Juan's ETJ could not expand west of I Road. The agreement contained a renewal provision, which read as follows: "This agreement shall be in force and effect for a period of ten years from the effective date of the agreement at which time the same shall expire if not renewed and the same shall be renewed at the end of subsequent ten year periods." The parties agree that the agreement governed the boundaries of the cities' ETJs until at least 1993. The parties dispute whether the agreement was renewed at that point. San Juan also disputes which documents comprise the agreement between the parties.

In 1994, 1996, 1997, and 1998, San Juan passed a series of seven ordinances annexing various parcels of land to its south. Each of the seven annexation ordinances expanded the corporate boundaries of San Juan and each contained the following statement about ETJ: "The extraterritorial jurisdiction of the City of San Juan, Texas, shall expand in conformity with this annexation and shall comprise an

---

[3] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

3

area around the new Corporate Limits of the City of San Juan" consistent with the local government code. If valid and effective, the ETJ statements in the ordinances would have extended San Juan's ETJ west of I Road. It is undisputed by the parties that Pharr raised no objection or challenge to San Juan's 1990s annexation ordinances.

In 2002 and 2003, Pharr passed a series of four annexation ordinances. Each of the 2002-2003 ordinances annexed property west of I Road. In 2008, Pharr passed further ordinances annexing land to the east of I Road. San Juan challenged each of the annexation ordinances. The effect of Pharr's ordinances was both parties attempting to assert their annexation rights within ETJ claimed by the other. It is this circumstance that led to this litigation.

## II. PROCEDURAL BACKGROUND

In October 2006, San Juan filed suit against Pharr seeking the following declaratory judgments: voiding Pharr's 2002-2003 annexation ordinances and any Pharr ordinances annexing land east of I Road; validating San Juan's 1990s annexation ordinances; and generally stating the "rights, duties and obligations of the parties as to all ordinances in question." San Juan asked, in the alternative, that the trial court judicially apportion the cities' ETJs. San Juan later amended its suit to allege a breach of contract claim against Pharr, arguing that Pharr's annexations had breached the 1983 agreement. Pharr answered, in relevant part, that the 1983 agreement expired in 1993, at which point Pharr's ETJ statutorily expanded two miles from its city limits and which ETJ included areas both to the east and west of I Road. Pharr also counterclaimed for declaratory judgments of its own, namely that: Pharr

4

"enjoys ETJ extending to three and one-half miles from its city limits (including area east of I Road)"; Pharr "may rightfully annex property within its ETJ subject only to compliance with the applicable statutory provisions"; and San Juan take nothing by its suit. Pharr filed a motion for summary judgment, which was granted by the trial court. However, in December 2007, the trial court granted San Juan's motion for new trial.

San Juan and Pharr then filed new motions for summary judgment. San Juan filed a traditional motion for summary judgment on its declaratory judgment action on the ground that San Juan's 1990s annexation ordinances were valid and effective as a matter of law because Pharr failed to challenge the ordinances within two years of their passage, as was required by the version of the local government code in effect at the time. *See* Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 1, 1987 TEX. GEN. LAWS 707, 766 (amended 2001) (current version at TEX. LOC. GOV'T CODE ANN. § 43.901 (West 2008)) (enacting the previous version of local government code section 43.901, which was effective until September 1, 2001); *see also* TEX. R. CIV. P. 166a(c). San Juan also filed a partial no-evidence motion for summary judgment on Pharr's declaratory judgment action on the ground that Pharr could present no evidence that it obtained the required written consent of San Juan to adopt any of the annexation ordinances Pharr passed in the 2002, 2003, and 2008, ordinances alleged by San Juan to have annexed property within San Juan's ETJ. *See* TEX. LOC. GOV'T CODE ANN. 42.023 (West 2008) (providing that a municipality may not consent to the reduction of its ETJ unless it "gives its written consent by ordinance or resolution"); *see also* TEX. R. CIV. P.

5

166a(i).[4]  Pharr filed a traditional motion for summary judgment, arguing that it had conclusively proven its entitlement to declaratory judgment regarding:  the extent of Pharr's ETJ; Pharr's right to annex property within its ETJ; the validity and propriety of Pharr's 2002, 2003, and 2008 annexations in the disputed area; and the invalidity of San Juan's attempts to expand its ETJ into Pharr's.  Pharr also moved for traditional summary judgment on San Juan's breach of contract cause of action, arguing that Pharr had conclusively proven that the agreement expired in 1993.

In June 2009, the trial court granted Pharr's motion for summary judgment and denied San Juan's.  In doing so, the trial court entered an order declaring that:  (1) the 1983 agreement expired by its own terms in 1993 and "no other legally valid and operational written agreement exists between [the cities] regarding their respective rights to [ETJ]"; (2) Pharr's current ETJ "extends to three and one-half (3.5) miles from its city limits"; (3) Pharr's current ETJ "extends east of 'I' Road"; and (4) Pharr "may rightfully annex property within its [ETJ]" subject to the local government code.  This appeal followed.

### III.  STANDARD OF REVIEW

We review the trial court's granting or denial of a traditional motion for summary judgment de novo.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.—Corpus Christi 2003, no

---

[4] San Juan also filed a no-evidence motion for summary judgment on the ground that Pharr could not present any evidence on its statute of limitations defense.  By this ground, San Juan argued that because Pharr did not challenge San Juan's 1990s annexation ordinances within two years, Pharr could not prove its limitations defense.  We do not address this ground, however, because it is effectively subsumed within San Juan's traditional summary judgment ground.  *See* TEX. R. APP. P. 47.1.

6

pet.).  When reviewing a traditional summary judgment, we must determine whether the movant met its burden to establish that (1) no genuine issue of material fact exists, and (2) the movant is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *Provident Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003) (citing *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex. 2001)); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).  In reviewing a traditional summary judgment, we consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in favor of the nonmovant.  *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007) (per curiam).  "A party moving for summary judgment must establish its right to summary judgment on the issues expressly presented to the trial court by conclusively proving all elements of its cause of action or defense as a matter of law."  *Elliot-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999) (citations omitted); *see also* TEX. R. CIV. P. 166a(b), (c).  A defendant can also prevail on summary judgment by disproving "at least one of the essential elements of the plaintiff's causes of action."  *Diaz*, 9 S.W.3d at 803.  The summary judgment movant has conclusively established a matter if reasonable people could not differ as to the conclusion to be drawn from the evidence.  *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

Although a party generally cannot appeal the denial of a motion for summary judgment, when both sides move for summary judgment and the trial court grants one motion and denies the other, the unsuccessful party may appeal both the prevailing party's motion and the denial of its own.  *Tex. Mun. Power Agency v. Pub. Util.*

7

*Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). In such a case, the appellate court should review both sides' summary judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *Dorsett*, 164 S.W.3d at 661; *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## IV. SAN JUAN'S MOTION FOR SUMMARY JUDGMENT ON THE VALIDITY OF ITS 1990S ANNEXATIONS

By its first issue, San Juan argues that the trial court erred in denying its motion for summary judgment on the validity of San Juan's 1990s annexations. San Juan argues that Pharr conceded the validity of the annexations by admitting that it had remained silent at the time, and as a result, the trial court erred in refusing to affirm the validity of those annexations. By this issue, San Juan appears to limit its arguments to the validity of the annexations, characterizing the issue as a "glaring" oversight by the trial court. In other words, according to San Juan, Pharr's "candid[] admi[ssion] that its silence had become conclusive consent" precluded the trial court's "refusal to affirm the validity of San Juan's annexations of land to its south." However, in its prayer, San Juan then asks this Court to affirm the validity of the 1990s ordinances, within which San Juan also purported to extend its ETJ, not merely its city limits through annexation. And the prayer mirrors the ground on which San Juan sought traditional summary judgment, in which ground San Juan asked the trial court to affirm the validity of ordinances in their entirety and which ordinances "extend[ed] the city limits and therefore the *corresponding ETJ* of the City of San Juan." (Emphasis added.) We therefore disagree with San Juan's characterization of the issue as a

8

simple but glaring oversight by the trial court that we can easily correct by granting summary judgment that the "annexations were valid."  Rather, our resolution of San Juan's traditional summary judgment ground—which involves both annexation and the possible attendant expansion of San Juan's ETJ—is dependent on our resolution of San Juan's second and third issues concerning Pharr's motion for summary judgment and the disputed areas of ETJ.

## V.  PHARR'S MOTION FOR SUMMARY JUDGMENT

By two issues, San Juan argues that the trial court erred in granting Pharr's motion for summary judgment.  In its second issue, San Juan argues its 1990s annexation ordinances, to which Pharr allegedly consented, also extended San Juan's ETJ, thus precluding the later annexations by Pharr.  In its third issue, San Juan argues, alternatively, that the 1983 agreement between San Juan and Pharr was renewed in 1993 and, as a result, prohibited any annexations and expansion of Pharr's ETJ east of I Road.

### A.  1983 Agreement

We believe that the boundaries of the cities' ETJ at the time of San Juan's 1990s annexation ordinances are central to determining the effect and scope of San Juan's ordinances and the validity of Pharr's later annexation ordinances.  As a result, whether the cities' 1983 agreement terminated in 1993 will affect our resolution of the remaining grounds for summary judgment, and we will therefore first address San Juan's alternative challenge to the granting of Pharr's motion for summary judgment.

9

By its third issue, San Juan argues that the trial court erred in declaring that the 1983 agreement terminated in 1993. San Juan argues that the termination and renewal provision of the agreement is ambiguous and that the trial court thus erred in granting summary judgment on this ground because a fact finder must determine the intent of the parties when an agreement contains an ambiguity.

If a contract can be given a certain or definite legal meaning, then it is not ambiguous. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "When a contract is not ambiguous, the construction of the written instrument is a question of law for the court." *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999) (citing *Coker*, 650 S.W.2d at 393); *see J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). If a contact is susceptible to more than one reasonable interpretation, it is ambiguous. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam). Lack of clarity, however, does not create an ambiguity, and not every difference in the interpretation of a contract amounts to an ambiguity. *Universal Health Serv., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003) (quoting *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994)). When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the contract is a question of fact for the jury. *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987).

San Juan contends that there are two versions of the agreement: one that was signed by the mayors of both cities (the first version), and another that was included in the minutes of the Pharr city council meeting at which the agreement was approved by

the council (the second version).   In the first version, the renewal provision reads as follows: "This agreement shall be in force and effect for a period of ten years from the effective date of the agreement at which time the same shall expire if not renewed and the same shall be renewed at the end of subsequent ten year periods."   In the second version, the renewal provision reads as follows:   "This agreement shall be in force and effect for a period of ten years from the effective date of the agreement at which time the same shall expire if not renewed at the end of subsequent ten year periods." Citing *Progressive County Mutual Insurance Company v. Kelley*, San Juan argues that the existence of two competing versions of the agreement creates an ambiguity that prevents summary judgment.   *See* 284 S.W.3d 805, 807-08 (Tex. 2009) (per curiam). However, *Kelley* is distinguishable from this case.

In *Kelley*, the plaintiff was injured in an automobile accident.   *Id.* at 806.   The plaintiff was insured under a family automobile insurance policy with the defendant that covered five family cars.   *Id.*   Four of the family's cars were listed on one policy document; the fifth car was listed on a separate document.   *Id.*   The documents contained separate policy numbers.   *Id.*   After the defendant paid the policy limit, the plaintiff attempted to make a claim under the second policy document, but the defendant denied that there was a second policy and refused to make additional payments.   *Id.*   The supreme court held that "the existence of two documents" created a latent ambiguity, and the court therefore considered extrinsic evidence before concluding that the plaintiff had raised a fact issue as to whether the defendant had issued two insurance policies.   *Id.* at 807-08.   In other words, the supreme court

11

held "that the documents are ambiguous as to whether one or two policies existed." *Id.* at 808.

Here, only one version was signed by the mayors of both cities. The re-printing of the agreement in the Pharr council meeting minutes did not create a separate or competing document. Unlike the plaintiff in *Kelley* who possessed two separate documents with two separate policy numbers and believed that she held two distinct insurance policies, the parties here do not contend that there were two separate annexation and ETJ agreements. In short, we are not persuaded that *Kelley* controls our ambiguity determination in this case.

Rather, it is clear that the agreement between the parties is embodied in the version signed by both mayors. And we cannot conclude that the renewal provision contained in that document is ambiguous. The provision states that the agreement shall be in force and effect for ten years from the effective date—i.e., from 1983 to 1993—and then "shall expire if not renewed." *See Coker*, 650 S.W.2d at 393. The mandatory nature of this language clearly contemplates that the parties must take some affirmative action to renew the contract, failing which it shall expire. The next phrase regarding subsequent ten-year periods does not come into play if the parties do not renew the agreement at the end of the first ten-year period. Any other construction would render the "shall expire" mandate meaningless. *See Frost Nat'l Bank*, 165 S.W.3d at 312 (holding that we should avoid constructions that render contract terms meaningless). And any lack of clarity about "subsequent ten year periods" does not create an ambiguity here. *See Universal Health Serv., Inc.*, 121

12

S.W.3d at 746.

It is undisputed that neither city took any action to renew the agreement in 1993. Thus, we conclude that the agreement expired in 1993, and the cities' annexation powers became governed solely by statute from that point forward. *See MCI Telecomms. Corp.*, 995 S.W.2d at 651 (holding that interpretation of an unambiguous contract is a question of law for the court). As such, at the expiration of the agreement in 1993, Pharr's ETJ expanded to its statutory distance of two miles from Pharr's city limits.[5] *See* TEX. LOC. GOV'T CODE ANN. § 42.021(a)(3). It is undisputed that, under this scenario, Pharr's expanded ETJ would have extended east of I Road and included the land south of San Juan in which San Juan later annexed property in its 1994, 1996, 1997, and 1998 ordinances.

Based on the foregoing, we conclude that Pharr conclusively negated San Juan's breach of contract action. *See Diaz*, 9 S.W.3d at 803. The 1983 agreement expired by its own terms in 1993; as a result, any action taken by Pharr with regard to expanding its city limits and ETJ was not governed by the agreement from that point forward, so Pharr's 2002, 2003, and 2008 actions could not have breached the 1983 agreement. The trial court therefore did not err in granting Pharr's motion for summary judgment on this ground. San Juan's third issue is overruled.

**B. Expansion of San Juan's ETJ under the Local Government Code**

Having determined that the 1983 agreement expired by its own terms in 1993

---

[5] The parties do not dispute that Pharr's population at that time entitled it to two miles of ETJ. *See* TEX. LOC. GOV'T CODE ANN. § 42.021(a)(3) (providing that a municipality with a population of 25,000 to 49,999 has ETJ within two miles of its city limits).

13

and that Pharr's ETJ automatically expanded east of I Road as a result, we now address San Juan's second issue, in which it argues that by failing to challenge San Juan's 1990s annexation ordinances, Pharr consented not only to the expansion of San Juan's city limits but also to the accompanying expansion of San Juan's ETJ around those new annexations. Under the rationale of this argument, San Juan's ETJ would have expanded west of I Road, and both Pharr's 2002-2003 annexations—which annexed property on the west side of I Road but within San Juan's purportedly expanded ETJ—and Pharr's 2008 annexations east of I Road would have been invalid encroachments into San Juan's ETJ. In support of the foregoing, San Juan relies on the version of local government code section 43.901 in effect at the time of those ordinances and cases interpreting that earlier version of the statute.

When San Juan passed its 1990s annexation ordinances, section 43.901 of the local government code read as follows:

> A municipal ordinance defining boundaries of or annexing area to a municipality is conclusively presumed to have been adopted with the consent of all appropriate persons if:
>
> (1) two years have expired after the date of the adoption; and
>
> (2) an action to annul or review the adoption of the ordinance has not been initiated in that two-year period.

*See* Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 1, 1987 TEX. GEN. LAWS 707, 766;[6]

---

[6] The current version of section 43.901 is the result of a 2001 amendment, which added the phrase "except another municipality" after "all appropriate persons." *See* Act of May 15, 2001, 77th Leg., R.S., ch. 401, § 1, 2001 TEX. GEN. LAWS 733, 733-34 (codified at TEX. LOC. GOV'T CODE ANN. § 43.901 (West 2008)). The amendment's effect was to preclude the conclusive presumption when

*see also City of Murphy v. City of Parker*, 932 S.W.2d 479, 480-81 (Tex. 1996) (quoting and interpreting the prior version of section 43.901). In *City of Murphy v. City of Parker*, the Texas Supreme Court concluded that the phrase "all appropriate persons . . . clearly include[d] municipalities." 932 S.W.2d at 481. The supreme court then held that "the plain language of section 43.901 erects a complete statutory bar to any challenge of a municipality's annexation ordinance based on lack of consent." *Id.*; *see City of Roanoke v. Town of Westlake*, 111 S.W.3d 617, 631-32 (Tex. App.—Fort Worth 2003, pet. denied); *see also City of Webster v. City of Houston*, No. 14-04-00353-CV, 2005 WL 913813, at *2 (Tex. App.—Houston [14th Dist.] Apr. 19, 2005, no pet.) (mem. op.).

We believe that the foregoing law and cases stand for the proposition that a city's *annexation*—i.e., the expansion of the city's city limits—into another city's existing ETJ is conclusively presumed to be valid absent any action by the other city to challenge the annexation within two years. Here, it is undisputed that Pharr did not take any action to challenge the *annexations* accomplished by San Juan's 1994, 1996, 1997, and 1998 ordinances, and as a result, Pharr is barred from challenging those *annexations* today. *See City of Murphy*, 932 S.W.2d at 481. However, by its second issue, San Juan asks us to enlarge this presumption, and resulting limitations bar, to an annexation ordinance's expansion of the annexing city's ETJ. We will not do so, as the statutory scheme governing ETJ discourages such a result.

The prior version of 43.901 and *City of Murphy* and its progeny do not address

---

another municipality failed to challenge an annexation ordinance. *See* TEX. LOC. GOV'T CODE ANN. § 43.901.

the subject of ETJ. In particular, we find the title of section 43.901 telling—"Circumstances in which Consent to *Boundaries* or *Annexation* is Presumed." *See* Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 1, 1987 TEX. GEN. LAWS 707, 766 (emphasis added); *see also* TEX. LOC. GOV'T CODE ANN. § 42.021 (West 2008) (distinguishing between a city's boundaries and its ETJ by providing that the "extraterritorial jurisdiction of a municipality is the unincorporated area that is contiguous to the corporate boundaries of the municipality"). Further, *City of Murphy* and the cases following it speak only to the propriety and effect of annexations of land in another city's extraterritorial jurisdiction. *See City of Murphy*, 932 S.W.2d at 482 ("After two years, section 43.901 created the conclusive presumption that Murphy consented to the *annexation*, and barred any subsequent challenges." (emphasis added)); *City of Roanoke*, 111 S.W.3d at 630, 632 (addressing annexation of a certain tract of land and whether the silence of the city in whose ETJ the annexing city expanded its boundaries amounted to a conclusive presumption that the annexation was valid); *see also City of Webster*, 2005 WL 913813, at *2 (holding that the prior version of section 43.901 "bars a municipality's challenge to another municipality's *annexation* of its extraterritorial jurisdiction if not brought within two years") (emphasis added)).

Other provisions of the local government code, by contrast, clearly govern the expansion and reduction of ETJ. For example, while section 42.022 provides that the ETJ of a city "expands with [] annexation" consistent with the city's population in accordance with section 42.021, section 42.022 also provides that a city's expansion of

16

ETJ "through annexation . . . may not include any area in the existing extraterritorial jurisdiction of another municipality.   TEX. LOC. GOV'T CODE ANN. § 42.022(a), (c) (West 2008); *see also id.* § 42.021(a) (setting the statutory ETJs of cities depending on their populations).   With regard to the reduction of ETJ, section 42.023 provides that the "extraterritorial jurisdiction of a municipality may not be reduced unless the governing body of the municipality gives its written consent by ordinance or resolution . . . ."   *Id.* § 42.023 (West 2008).[7]

As noted above, when the 1983 agreement between the cities expired in 1993, Pharr's ETJ automatically expanded to include the land south of San Juan in which San Juan later annexed land by its 1994, 1996, 1997, and 1998 ordinances.   *See id.* § 42.021(a).   Therefore, San Juan's expansion of its city limits through those annexations was accomplished by taking land within Pharr's existing ETJ, which had the effect of reducing Pharr's ETJ without its written consent.   *See City of Roanoke*, 111 S.W.3d at 631 (noting that the effect of section 42.023 is that a city may not annex land that is within another city's ETJ with the other city's written consent); *see also* TEX. LOC. GOV'T CODE ANN. § 42.023.   And even though, under the prior version of 43.901 and *City of Murphy*, Pharr cannot challenge the annexations by San Juan because it did not object within two years, we cannot conclude that Pharr likewise consented to the further reduction of its ETJ and forfeited any challenges to that reduction.   In other words, we conclude that any further reduction of Pharr's ETJ through an expansion

---

[7] Local government code sections 42.021, 42.022, and 42.023 are currently the same as they were at the time of San Juan's 1990s annexations.   *See* Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 1, 1987 TEX. GEN. LAWS 707, 741 (codified at TEX. LOC. GOV'T CODE ANN. §§ 42.021-.023 (West 2008)).

San Juan's ETJ around the newly annexed land was prohibited by the ETJ scheme in the local government code. *See* TEX. LOC. GOV'T CODE ANN. § 42.023. Moreover, we conclude that San Juan could not expand its ETJ through the 1990s annexations because that expansion would have included areas within Pharr's existing ETJ. *See id.* § 42.022(c).

In sum, Pharr established its right to its requested declaratory relief as a matter of law. *See Diaz*, 9 S.W.3d at 803; *see also* TEX. R. CIV. P. 166a(c). San Juan's ETJ did not expand around its 1990s annexations, and Pharr acted within its rights to pass its 2002, 2003, and 2008 annexation ordinances because those annexations were within Pharr's existing ETJ. The trial court therefore did not err in granting summary judgment on Pharr's remaining grounds embodied in the trial court's judgment: that (1) Pharr's current ETJ extends to three and one-half [] miles from its city limits";[8] (2) Pharr's current ETJ "extends east of 'I' Road"; and (3) Pharr "may rightfully annex property within its [ETJ]" subject to the local government code.[9] San Juan's second issue is overruled.[10]

---

[8] The parties do not dispute that Pharr's current population entitles it to this amount of ETJ.

[9] Likewise, the trial court did not err in denying San Juan's partial no-evidence summary judgment on the validity of Pharr's 2002, 2003, and 2008 annexations as the evidence conclusively established that Pharr's annexations were within its existing ETJ. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

[10] In its second issue, San Juan also asks the Court to "clarify that the ETJ surrounding San Juan's corporate boundaries, including its annexations, forms the eastern boundary of Pharr's ETJ." In other words, if the Court determines that San Juan's ETJ expanded with its 1990s annexations, that ETJ would stretch to the Rio Grande River, and as a result, "Pharr cannot possess ETJ further to the east, because that land is no longer 'contiguous' or 'adjacent' to Pharr's boundaries." *See* TEX. LOC. GOV'T CODE ANN. § 42.021. However, having concluded that San Juan's ETJ did not, in fact, expand with its 1990s annexations, Pharr's ETJ that now surrounds San Juan, consistent with the statute, is still contiguous to its borders. We are therefore not persuaded by San Juan's argument in this regard.

## VI. SAN JUAN'S MOTION FOR SUMMARY JUDGMENT ON THE VALIDITY OF ITS 1990S ORDINANCES (REVISITED)

Having overruled San Juan's second and third issues and concluded that the 1983 agreement expired by its own terms in 1993, Pharr's ETJ automatically expanded at that point, and Pharr's ordinances annexing land in that expanded ETJ were valid, we now address San Juan's first issue in which it challenges the trial court's denial of its traditional motion for summary judgment. In that motion, San Juan argued that it was entitled to summary judgment on its request for a declaration that its 1994, 1996, 1997, and 1998 annexation ordinances were valid and effective.

As discussed above, the evidence shows that San Juan passed seven ordinances in 1994, 1996, 1997, and 1998 annexing land to its south. Those ordinances also purported to expand San Juan's ETJ around those annexations. Because the 1983 agreement between the cities had expired, however, the land into which San Juan annexed was Pharr's existing ETJ, and as a result, we believe that San Juan's 1990s annexations were improper encroachments into Pharr's ETJ. *See MCI Telecomms. Corp.*, 995 S.W.2d at 651; *see also* TEX. LOC. GOV'T CODE ANN. §§ 42.022(c), 42.023. Nonetheless, because Pharr did not challenge those annexations within two years, the annexations were conclusively presumed to be valid, and Pharr was thereafter barred from challenging the validity of the annexations. *See City of Murphy*, 932 S.W.2d at 481; *see also* Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 1, 1987 TEX. GEN. LAWS 707, 766. But, as explained previously, Pharr did not forfeit its right to challenge San Juan's attempts to expand its ETJ. *See* TEX. LOC. GOV'T CODE ANN. §§ 42.022(c), 42.023.

19

Based on the foregoing, we conclude that San Juan proved as a matter of law that its annexations—and the portions of its ordinances enacting those annexations—are valid. *See* TEX. R. CIV. P. 166a(c). For this reason, San Juan's first issue is partially sustained. San Juan cannot, however, prove that it was entitled to expand its ETJ around those ordinances, and we therefore further conclude that the portions of the ordinances purporting to expand San Juan's ETJ are invalid. *See id.*; *see also Diaz*, 9 S.W.3d at 803. For this reason, San Juan's first issue is partially overruled.

## VII. CONCLUSION

We affirm the judgment of the trial court granting Pharr's motion for summary judgment. We also affirm the trial court's denial of San Juan's motion for summary judgment to the extent it was based on the 1990s ordinances' attempts to enlarge the ETJ of San Juan around its annexations. We reverse the trial court's denial of San Juan's motion for summary judgment to the extent it was based on the annexations in the 1990s ordinances, and we render judgment that the annexations in those seven ordinances were valid and effective. *See Dorsett*, 164 S.W.3d at 661; *FM Props. Operating Co.*, 22 S.W.3d at 872.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
26th day of May, 2011.

20