

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00109-CV

DOE #1, DOE #2 AND DOE #3, APPELLANTS

V.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA., APPELLEE

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 98,575-E, Honorable Douglas Woodburn, Presiding

July 6, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

The trial court granted summary judgment to appellee National Union Fire Insurance Company of Pittsburgh, PA, in its coverage dispute with insureds under a commercial general liability policy issued to "Watchtower Bible and Tract Society Et al." Parts of the record are sealed, and the particular entities affiliated with the Watchtower Society who seek coverage are identified as Doe #1, Doe #2, and Doe #3 (the

"insureds").[1]  The insureds appeal, contending the ground National Union asserted in its traditional summary judgment motion was not meritorious.  We agree, and will reverse the trial court's judgment and remand the case.

### Factual and Procedural Background

National Union issued commercial general liability (CGL) policies annually for four policy periods, beginning in 1989 and ending in 1993.[2]  The policies' "Commercial General Liability Coverage Form" states coverages for "Coverage A. Bodily Injury and Property Damage Liability;" "Coverage B. Personal and Advertising Injury Liability;" and "Coverage C. Medical Payments."  Each coverage contains stated "Exclusions."

It appears undisputed that the insureds sought coverage under Coverage A, under which National Union agreed to "pay those sums that the insured becomes legally obligated to pay because of 'bodily injury' or 'property damage' to which this insurance applies."  Regarding the exclusions found under Coverage A, there appear paragraphs "a" through "n."[3]

Endorsement MS #2 is entitled "Clergy Counseling Professional Liability Coverage."  Following the title is the statement that "[t]his Endorsement modifies such

---

[1] In a prior opinion, we reversed a summary judgment the trial court granted. *Doe v. Nat'l Union Fire Ins. Co.,* No. 07-11-0251-CV, 2012 Tex. App. LEXIS 2585 (Tex. App.—Amarillo Mar. 30, 2012, no pet.) (mem. op.). After remand, the insureds amended their pleadings and National Union filed a more complete motion for summary judgment, which the trial court granted.

[2] The CGL policies are Insurance Services Office, Inc. forms.  *See American Fam. Mut. Ins. Co. v. Am. Girl, Inc.*, 673 N.W.2d 65, 73 (Wis. 2004) (discussing history and form of standard CGL policies); *Gilbert Texas Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010).

[3] The fifteen paragraphs of exclusions are virtually identical to those contained in paragraph 2 Exclusions, of Coverage A of Section I Coverages of the CGL policy appended to the court's opinion in *State Nat'l Ins. Co. v. City of Miami*, 08-22861-CIV-SEITZ/O'SULLIVAN, 2009 U.S. Dist. LEXIS 130688 (S.D. Fla. June 15, 2009).

insurance as is afforded by the provisions of the policy relating to Comprehensive

General Liability Insurance."[4] The endorsement's remaining language reads:

It is agreed that:

1. The definition of bodily injury is amended to include any acts, errors, or omissions of the insured arising out of counseling activities of the insured.

2. The PERSONS INSURED provision is amended to include any cleric, elder or ministerial servant designated as such by the named insured while giving counsel within the scope of his duties as such.

3. The Exclusions are replaced by the following:

This insurance does not apply to:

a) liability assumed by the insured under any contract or agreement.

b) liability on account of bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of his employment or to any obligation for which the insured or any carrier as his insurer may be held liable under any Worker's Compensation, Unemployment Compensation or Disability Benefits Law or under any similar law.

c) liability resulting from the rendering of medical, radiological, surgical, dental or nursing treatments, including shock therapy and the prescription, utilization, furnishing or dispensing of drugs or medical, radiological, surgical, dental or nursing supplies or appliances.

d) liability resulting from the insured's commitment to a psychiatric institution.

e) the ownership, maintenance, operation, use, loading or unloading of any motor vehicle, trailer, semi-trailer, watercraft of [sic] aircraft.

f) liability resulting from the acts, errors or omissions of the insured as a member of a formal accreditation or professional board or committee of any hospital or professional society.

---

[4] Despite the reference to "comprehensive" general liability insurance, it is undisputed the endorsement modifies the CGL coverage.

g) liability resulting from an insured accepting and/or undertaking custodial care or responsibility of a patient pursuant to request, instruction, authorization or direction of any governmental agency, authority, board or officer having such authority or responsibility.

h) liability resulting from any actual or alleged conduct of sexual nature.

i) injury arising out of willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured.

j) any dishonest, fraudulent or criminal act or omissions of any insured.

All other terms, conditions, and premiums remain the same.

In addition the policy issued in 1992 contains an endorsement MS #14, which states, "In consideration of the premium charged, it is hereby understood and agreed that MS #2 'Clergy Counseling Professional Liability Coverage' is amended as follows: 3. 'The Exclusions for this coverage part only are replaced by the following:'" Nothing comes thereafter except a final sentence providing: "All other terms and conditions remain unchanged" and a blank signature line.

The insureds sued National Union, alleging breach of contract and bad faith claims from its failure to defend against and pay claims brought against them in 2008 and 2009 by individuals. The individuals alleged that, while minors, they were victimized by sexual conduct of persons associated with the insureds during the policy periods of one or more of National Union's CGL policies. The conduct did not occur in the course of counseling activities by clergy. The insureds settled the claims.

Analysis

National Union's amended motion for summary judgment asserted that "the clear and unambiguous language of [the CGL policies] does not provide coverage for liability that resulted from conduct of a sexual nature, including the sexual abuse of minors." National Union likewise asserted coverage was excluded because the insureds "willfully failed to report the abuse of the complainants to the proper authorities," in violation of law.

We apply to insurance policies the rules of construction applicable to other contracts, aiming to ascertain the parties' intent. *Gilbert Texas Constr., L.P.,* 327 S.W.3d at 126; *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.,* 267 S.W.3d 20, 23 (Tex. 2008). The question whether a contract is ambiguous is one of law to be decided by the court, looking at the contract as a whole in light of the circumstances present when it was executed. *Progressive Cty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 808 (Tex. 2009) (per curiam); *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). An unambiguous instrument is worded so that it can be given a certain or definite legal meaning or interpretation. *See Kelley,* 284 S.W.3d at 807 (*citing Coker*, 650 S.W.2d at 393). But when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning, then it is ambiguous and its meaning must be resolved by a finder of fact. *Coker*, 650 S.W.2d at 394.

Neither the sexual conduct exclusion nor the willful violation of law exclusion on which National Union relies appears in the list of exclusions stated in the CGL policy's Coverage A. National Union relies instead on exclusions listed in the MS #2

5

endorsement. The endorsement's exclusion list includes paragraph (h), excluding "liability resulting from any actual or alleged conduct of a sexual nature," and paragraph (i), excluding "injury arising out of willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured."

To reach its position that the two exclusions stated in the endorsement apply to the insureds' claims, National Union points to the endorsement's language stating that the "Exclusions are replaced" by those listed in the endorsement. It contends that by the endorsement's language, the parties expressed an intention to apply the endorsement's listed exclusions to all the policy's coverage for bodily injury and property damage liability, replacing for all purposes the exclusions listed in the CGL form's Coverage A. The insureds' pleadings asserted that the endorsement's "Exclusions are replaced" wording also can be read to apply its listed exclusions only to liability arising under the clergy counseling professional liability coverage, and asserted the endorsement language was therefore ambiguous. They contended that the 1992 endorsement MS #14 was intended to clarify what was unclear in MS #2, that the endorsement's exclusions were limited to coverage provided under the clergy counseling professional liability coverage.

By its grant of summary judgment, the trial court implicitly determined that the policy language was reasonably susceptible to only one reading, and that the one reading was that given it by National Union. *Coker*, 650 S.W.2d at 394. We cannot agree that the reading given the policy by National Union is its only reasonable reading. As the dissent observes, National Union's position may give the word "replace" its usual and common meaning. But even that point is not free from difficulty. Nothing in the

6

phrase "the Exclusions are replaced" limits its application to the exclusions in Coverage A of the CGL policy. Does the language replace also the exclusions listed in Coverages B and C of the policy? The MS #2 endorsement does not tell us. Moreover, the topics addressed by most of the exclusions listed in the endorsement are significantly different even from those listed under Coverage A of the CGL policy. The consequences of the wholesale deletion of Coverage A's exclusions and substitution of those listed in the endorsement are such as to leave us uncertain that National Union's position in this litigation reflects the intentions of the parties at the time the policies were issued.[5] *See Kelley,* 284 S.W.3d at 808.

We find the language of the MS #2 endorsement ambiguous. It follows that the trial court could not properly have granted summary judgment on the ground asserted by National Union. *Coker*, 650 S.W.2d at 394. The trial court's judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

James T. Campbell
Justice

Quinn, C.J., dissenting.

---

[5] For instance, if National Union's position reflects the intentions of the parties, the CGL policy carried none of the "business risk" exclusions, no exclusion for intended or expected losses, and no exclusion for damage to property owned by the insured. *See American Fam. Mut.*, 673 N.W.2d at 74 (noting "[t]he CGL insuring agreement is a broad statement of coverage, and insurers limit their exposure to risk through a series of specific exclusions").

7