**Affirmed and Majority and Dissenting Opinions filed September 29, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00277-CV

### ELIE NASSAR AND RHONDA NASSAR, Appellants

V.

### LIBERTY MUTUAL FIRE INSURANCE COMPANY, LIBERTY MUTUAL GROUP, DAVE BAKER, MARY HAMILTON AND MARCUS SMITH, Appellees

**On Appeal from the 400th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 09-DCV-169566**

## D I S S E N T I N G   O P I N I O N

The outcome of this case — and the extent of insurance coverage for the policyholders' fence — turns on the meaning of subsection (2) of the insurance contract provision entitled "COVERAGE A (DWELLING)." The majority concludes that the provision is unambiguous and that coverage for the fence falls within it. I disagree. Either the policy language is ambiguous or coverage for the fence falls within the unambiguous language of subsection (1) of the same

provision. Either way, the trial court erred in adopting the insurer's construction of the policy language.

We are to give the insurance policy language its plain, ordinary meaning unless something else in the policy shows the parties intended a different, technical meaning.[1] When construing the policy's language, we are to examine the entire policy in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless.[2] If an insurance contract's language is unambiguous, we are to construe it as a matter of law and enforce it as written.[3] If a contract is subject to two or more reasonable interpretations, it is ambiguous.[4] In that event, we are to adopt the interpretation that favors the insured.[5]

Appellants Elie Nassar and Rhonda Nassar assert that their fence is covered under subsection (1) of their insurance contract with appellee Liberty Mutual Fire Insurance Company. Liberty Mutual disagrees and asserts the fence is covered under subsection (2) of the same provision. The operative policy language reads as follows:

**COVERAGE A (DWELLING)**

We cover:

1. the dwelling on the **residence premises** shown on the declarations page including structures attached to the dwelling.

2. other structures on the **residence premises** set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection. The

---

[1] *Tanner v. Nationwide Mut. Fire Ins. Co.,* 289 S.W.3d 828, 831 (Tex. 2009).

[2] *See Moayedi v. Interstate 35/Chisam Road, L.P.,* 438 S.W.3d 1, 7 (Tex. 2014).

[3] *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527–28 (Tex. 2010).

[4] *Balandran v. Safeco Ins. Co. of America*, 972 S.W.2d 738, 741 (Tex. 1998).

[5] *Progressive Cty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 808 (Tex. 2009).

> total limit of liability for other structures is the limit of liability shown on the declaration page or 10% of Coverage A (Dwelling) limit of liability, whichever is greater.

The policy defines the term "residence premises" as "the residence premises shown on the declarations page. This includes the one or two family dwelling, including other structures, and grounds where an insured resides or intends to reside within 60 days after the effective date of this policy." Notably, the policy does not define "structures" in subsection (1) or "other structures" in subsection (2). So, we are to give these terms their plain, ordinary, and generally accepted meanings.

According to the dictionary definition, "structure" is "something constructed or built;" "something made up of more or less interdependent elements or parts."[6] The Nassars' fence falls within the plain meaning of the term "structure." Elie Nassar submitted an affidavit in which he stated the fence was attached along the east side of the house, the north side of the house, and the west side of the house. Under the plain meaning of subsection (1), the Nassars' fence is a structure attached to the dwelling.

Liberty Mutual argues that the fence is a "connection" and therefore cannot be a "structure" attached to the dwelling. The majority concludes the policy language unambiguously includes fences in subsection (2) because including fences in subsection (1) would render a portion of subsection (2) meaningless. According to the majority, if a fence attached to the dwelling is a "structure," then the language providing for the distinct treatment of "other structures" that are connected to the dwelling by only a fence is meaningless. Neither contention can stand.

Liberty Mutual's argument fails because Liberty Mutual ignores the

---

[6] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2267 (3d ed. 1993).

possibility that a fence can be both a "connection" and a "structure." Nothing in the policy forecloses the possibility that "connections" are a subset of "structures."

Likewise, the majority is incorrect because including fences in "structures" does not render any provision of the policy meaningless. Subsection (1) covers attached "structures." Subsection (2) covers two distinct classes of "structures": freestanding "structures" separated from the dwelling by clear space and a particular subset of the class of "structures." The subset of the class of "structures" covered under subsection (2) includes those attached to the dwelling by fences, utility lines, or similar connections. Without the "connection" language, the policy covers only "structures" attached to the dwelling and "structures" separated from the dwelling by clear space. "Structures" attached to the dwelling by a fence do not clearly fall into either category, regardless of whether fences fall within the class of "structures" described by subsection (1).

The language in subsection (2) clears up that ambiguity by isolating and removing from subsection (1) the subset of "structures" attached to the dwelling by a fence, utility line, or similar connection (hereinafter collectively "Connections"). Assume, for example, the insured owns a house, a fence (attached to the house by bolts), and a barn (attached to the fence). Assume also that a fence is a "structure." Under this scenario, the house and fence fall squarely within subsection (1). The barn then becomes a "structure" attached to an attached "structure." The barn is not entirely separated by clear space from the dwelling and its attachments. As a "structure" attached to a "structure" attached to the dwelling, the barn arguably also falls within subsection (1). The qualifying language regarding connective structures, however, removes the barn from subsection (1) and places it squarely within subsection (2). Subsection (2) then covers two classes of "structures" — freestanding "structures" and those attached to the dwelling by Connections.

Under subsection (2), the total limit of liability for the "other structures" is 10% of the limit of liability for structures covered by subsection (1). The policy language in subsection (2) is not rendered meaningless by including fences in the class of "structures" attached to the dwelling under subsection (1). Construing the provisions in this way gives effect to both subsections so that neither is without meaning.

The policy language does not unambiguously place the Nassars' fence within the meaning of subsection (2). At a minimum, the policy language is ambiguous and therefore the court must adopt the interpretation that favors the Nassars as the insureds.[7] But, the policy language also can be fairly read to unambiguously state that the Nassars' fence is covered under subsection (1) because the fence is a "structure" that is attached to the dwelling. Under either scenario, the trial court erred in construing the policy language in favor of Liberty Mutual and in granting summary judgment with respect to the fence coverage.

Instead of affirming this portion of the trial court's summary judgment, this court should sustain the Nassars' first issue and reverse the trial court's summary judgment, and remand to the trial court. Because it does not, I respectfully dissent.


/s/     Kem Thompson Frost
Chief Justice



Panel consists of Chief Justice Frost and Justices Boyce and McCally (Boyce, J., majority).

---

[7] *See Progressive Cty. Mut. Ins. Co.*, 284 S.W.3d at 808.

5