NUMBER 13-09-00422-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG  

                                                                                                                     


 

CITY OF SAN JUAN,                                                                  Appellant,

 

v.

 

CITY OF PHARR,                                                           
    Appellee.

                                                                                                                     
  

 

On appeal from the 275th
District Court 

of Hidalgo County,
Texas.

   
                                                                                                                  

 

MEMORANDUM OPINION

 

Before Justices Yañez,
Rodriguez, and Benavides[1]

Memorandum Opinion by
Justice Rodriguez

 

 

                In this extraterritorial jurisdiction
(ETJ) case,[2]
appellant City of San Juan sued appellee City of Pharr for breach of contract
and sought a declaratory judgment regarding the validity of certain annexation
ordinances and the effect of those ordinances on San Juan's ETJ.  Pharr counterclaimed
for declaratory judgments regarding its own ETJ.  Both parties filed motions
for summary judgment on their claims, and the trial court granted the motion
filed by Pharr and denied the motion filed by San Juan.  By three issues, San
Juan argues that the trial court erred in:  (1) denying San Juan's motion for
summary judgment on the validity and effect of certain annexation ordinances
passed by San Juan in the 1990s because Pharr did not timely challenge the
ordinances and therefore consented to their validity; and granting Pharr's
motion for summary judgment on the validity and effect of certain annexation
ordinances passed by Pharr in the 2000s because (2) San Juan's 1990s annexation
ordinances, to which Pharr allegedly consented, also extended San Juan's ETJ,
thus precluding the later annexations by Pharr, and (3) alternatively, a 1983
agreement between San Juan and Pharr prohibited the expansion of Pharr's city
limits and ETJ beyond a certain boundary outlined in the agreement.  We affirm,
in part, and reverse and render, in part.

 

I. 
Factual Background[3]

 

            The evidence shows that San Juan and Pharr
are adjacent municipalities in the Texas Rio Grande Valley; San Juan is
situated to the east of Pharr.  In 1983, San Juan and Pharr entered into an
agreement governing the expansion of the cities' ETJs.  The agreement provided
that I Road, a major thoroughfare that runs north and south between the cities,
would serve as the boundary between San Juan and Pharr's ETJs.  Under the
agreement, Pharr's ETJ could not expand east of I Road, and San Juan's ETJ
could not expand west of I Road.  The agreement contained a renewal provision,
which read as follows:  "This agreement shall be in force and effect for a
period of ten years from the effective date of the agreement at which time the
same shall expire if not renewed and the same shall be renewed at the end of
subsequent ten year periods."  The parties agree that the agreement
governed the boundaries of the cities' ETJs until at least 1993.  The parties
dispute whether the agreement was renewed at that point.  San Juan also
disputes which documents comprise the agreement between the parties.

In 1994, 1996, 1997, and 1998, San Juan
passed a series of seven ordinances annexing various parcels of land to its
south.  Each of the seven annexation ordinances expanded the corporate
boundaries of San Juan and each contained the following statement about ETJ: 
"The extraterritorial jurisdiction of the City of San Juan, Texas, shall
expand in conformity with this annexation and shall comprise an area around the
new Corporate Limits of the City of San Juan" consistent with the local
government code.  If valid and effective, the ETJ statements in the ordinances
would have extended San Juan's ETJ west of I Road.  It is undisputed by the
parties that Pharr raised no objection or challenge to San Juan's 1990s
annexation ordinances.

In 2002 and 2003, Pharr passed a series
of four annexation ordinances.  Each of the 2002-2003 ordinances annexed
property west of I Road.  In 2008, Pharr passed further ordinances annexing
land to the east of I Road.  San Juan challenged each of the annexation
ordinances.  The effect of Pharr's ordinances was both parties attempting to
assert their annexation rights within ETJ claimed by the other.  It is this
circumstance that led to this litigation.

II. 
Procedural Background

 

            In October 2006, San Juan filed suit against
Pharr seeking the following declaratory judgments:  voiding Pharr's 2002-2003
annexation ordinances and any Pharr ordinances annexing land east of I Road;
validating San Juan's 1990s annexation ordinances; and generally stating the
"rights, duties and obligations of the parties as to all ordinances in
question."  San Juan asked, in the alternative, that the trial court
judicially apportion the cities' ETJs.  San Juan later amended its suit to
allege a breach of contract claim against Pharr, arguing that Pharr's
annexations had breached the 1983 agreement.  Pharr answered, in relevant part,
that the 1983 agreement expired in 1993, at which point Pharr's ETJ statutorily
expanded two miles from its city limits and which ETJ included areas both to
the east and west of I Road.  Pharr also counterclaimed for declaratory
judgments of its own, namely that:  Pharr "enjoys ETJ extending to three
and one-half miles from its city limits (including area east of I Road)";
Pharr "may rightfully annex property within its ETJ subject only to
compliance with the applicable statutory provisions"; and San Juan take
nothing by its suit.  Pharr filed a motion for summary judgment, which was
granted by the trial court.  However, in December 2007, the trial court granted
San Juan's motion for new trial.  

San Juan and Pharr then filed new
motions for summary judgment.  San Juan filed a traditional motion for summary
judgment on its declaratory judgment action on the ground that San Juan's 1990s
annexation ordinances were valid and effective as a matter of law because Pharr
failed to challenge the ordinances within two years of their passage, as was
required by the version of the local government code in effect at the time.  See
Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 1, 1987 Tex. Gen. Laws 707, 766 (amended 2001) (current version at Tex. Loc. Gov't Code Ann. § 43.901
(West 2008)) (enacting the previous version of local government code section
43.901, which was effective until September 1, 2001); see also Tex. R. Civ. P. 166a(c).  San Juan also
filed a partial no-evidence motion for summary judgment on Pharr's declaratory
judgment action on the ground that Pharr could present no evidence that it
obtained the required written consent of San Juan to adopt any of the
annexation ordinances Pharr passed in the 2002, 2003, and 2008, ordinances
alleged by San Juan to have annexed property within San Juan's ETJ.  See
Tex. Loc. Gov't Code Ann. 42.023
(West 2008) (providing that a municipality may not consent to the reduction of
its ETJ unless it "gives its written consent by ordinance or
resolution"); see also Tex.
R. Civ. P. 166a(i).[4] 
Pharr filed a traditional motion for summary judgment, arguing that it had
conclusively proven its entitlement to declaratory judgment regarding:  the
extent of Pharr's ETJ; Pharr's right to annex property within its ETJ; the
validity and propriety of Pharr's 2002, 2003, and 2008 annexations in the
disputed area; and the invalidity of San Juan's attempts to expand its ETJ into
Pharr's.  Pharr also moved for traditional summary judgment on San Juan's
breach of contract cause of action, arguing that Pharr had conclusively proven
that the agreement expired in 1993.  

In June 2009, the trial court granted
Pharr's motion for summary judgment and denied San Juan's.  In doing so, the
trial court entered an order declaring that:  (1) the 1983 agreement expired by
its own terms in 1993 and "no other legally valid and operational written
agreement exists between [the cities] regarding their respective rights to
[ETJ]"; (2) Pharr's current ETJ "extends to three and one-half (3.5)
miles from its city limits"; (3) Pharr's current ETJ "extends east of
'I' Road"; and (4) Pharr "may rightfully annex property within its
[ETJ]" subject to the local government code.  This appeal followed.

III. 
Standard of Review

 

We review the trial court's granting or
denial of a traditional motion for summary judgment de novo.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Branton v.
Wood, 100 S.W.3d 645, 646 (Tex. App.—Corpus Christi 2003, no pet.).  When
reviewing a traditional summary judgment, we must determine whether the movant
met its burden to establish that (1) no genuine issue of material fact exists,
and (2) the movant is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Provident
Life and Acc. Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003) (citing Haase
v. Glazner, 62 S.W.3d 795, 797 (Tex. 2001)); Sw. Elec. Power Co. v.
Grant, 73 S.W.3d 211, 215 (Tex. 2002).  In reviewing a traditional summary
judgment, we consider all the evidence in the light most favorable to the
nonmovant, indulging every reasonable inference and resolving any doubts in
favor of the nonmovant.  Goodyear Tire & Rubber Co. v. Mayes, 236
S.W.3d 754, 756 (Tex. 2007) (per curiam).  "A party moving for summary
judgment must establish its right to summary judgment on the issues expressly
presented to the trial court by conclusively proving all elements of its cause
of action or defense as a matter of law."  Elliot-Williams Co. v. Diaz,
9 S.W.3d 801, 803 (Tex. 1999) (citations omitted); see also Tex. R. Civ. P. 166a(b), (c).  A
defendant can also prevail on summary judgment by disproving "at least one
of the essential elements of the plaintiff's causes of action."  Diaz,
9 S.W.3d at 803.  The summary judgment movant has conclusively established a
matter if reasonable people could not differ as to the conclusion to be drawn
from the evidence.  See City of Keller v. Wilson, 168 S.W.3d 802, 816
(Tex. 2005).       

Although a party generally cannot appeal
the denial of a motion for summary judgment, when both sides move for summary
judgment and the trial court grants one motion and denies the other, the
unsuccessful party may appeal both the prevailing party's motion and the denial
of its own.  Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex., 253
S.W.3d 184, 192 (Tex. 2007).  In such a case, the appellate court should review
both sides' summary judgment evidence, determine all questions presented, and
render the judgment the trial court should have rendered.  Dorsett, 164
S.W.3d at 661; FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868,
872 (Tex. 2000).

IV. 
San Juan's Motion for Summary Judgment on the 

Validity
of its 1990s Annexations

 

            By
its first issue, San Juan argues that the trial court erred in denying its
motion for summary judgment on the validity of San Juan's 1990s annexations. 
San Juan argues that Pharr conceded the validity of the annexations by
admitting that it had remained silent at the time, and as a result, the trial
court erred in refusing to affirm the validity of those annexations.  By this
issue, San Juan appears to limit its arguments to the validity of the
annexations, characterizing the issue as a "glaring" oversight by the
trial court.  In other words, according to San Juan, Pharr's "candid[]
admi[ssion] that its silence had become conclusive consent" precluded the
trial court's "refusal to affirm the validity of San Juan's annexations of
land to its south."  However, in its prayer, San Juan then asks this Court
to affirm the validity of the 1990s ordinances, within which San Juan also
purported to extend its ETJ, not merely its city limits through annexation. 
And the prayer mirrors the ground on which San Juan sought traditional summary
judgment, in which ground San Juan asked the trial court to affirm the validity
of ordinances in their entirety and which ordinances "extend[ed] the city
limits and therefore the corresponding ETJ of the City of San
Juan."  (Emphasis added.)  We therefore disagree with San Juan's
characterization of the issue as a simple but glaring oversight by the trial
court that we can easily correct by granting summary judgment that the
"annexations were valid."  Rather, our resolution of San Juan's
traditional summary judgment ground—which involves both annexation and the
possible attendant expansion of San Juan's ETJ—is dependent on our resolution
of San Juan's second and third issues concerning Pharr's motion for summary
judgment and the disputed areas of ETJ.  

V. 
Pharr's Motion for Summary Judgment

 

            By two issues, San Juan argues that the trial
court erred in granting Pharr's motion for summary judgment.  In its second
issue, San Juan argues its 1990s annexation ordinances, to which Pharr allegedly
consented, also extended San Juan's ETJ, thus precluding the later annexations
by Pharr.  In its third issue, San Juan argues, alternatively, that the 1983
agreement between San Juan and Pharr was renewed in 1993 and, as a result,
prohibited any annexations and expansion of Pharr's ETJ east of I Road.

A.  1983 Agreement

 

            We believe that the boundaries of the cities'
ETJ at the time of San Juan's 1990s annexation ordinances are central to
determining the effect and scope of San Juan's ordinances and the validity of
Pharr's later annexation ordinances.  As a result, whether the cities' 1983
agreement terminated in 1993 will affect our resolution of the remaining
grounds for summary judgment, and we will therefore first address San Juan's
alternative challenge to the granting of Pharr's motion for summary judgment.  

 

By its third issue, San Juan argues that
the trial court erred in declaring that the 1983 agreement terminated in 1993. 
San Juan argues that the termination and renewal provision of the agreement is
ambiguous and that the trial court thus erred in granting summary judgment on
this ground because a fact finder must determine the intent of the parties when
an agreement contains an ambiguity.  

            If a contract can be given a certain or
definite legal meaning, then it is not ambiguous.  Coker v. Coker, 650
S.W.2d 391, 393 (Tex. 1983).   "When a contract is not ambiguous, the
construction of the written instrument is a question of law for the
court."  MCI Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d
647, 651 (Tex. 1999) (citing Coker, 650 S.W.2d at 393); see J.M.
Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003).  If a contact
is susceptible to more than one reasonable interpretation, it is ambiguous.  Frost
Nat'l Bank v. L & F Distribs., Ltd., 165 S.W.3d 310, 312 (Tex. 2005)
(per curiam).  Lack of clarity, however, does not create an ambiguity, and not
every difference in the interpretation of a contract amounts to an ambiguity.  Universal
Health Serv., Inc. v. Renaissance Women's Group, P.A., 121 S.W.3d 742, 746
(Tex. 2003) (quoting Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 134
(Tex. 1994)).  When a contract contains an ambiguity, the granting of a motion
for summary judgment is improper because the interpretation of the contract is
a question of fact for the jury.  Reilly v. Rangers Mgmt., Inc., 727
S.W.2d 527, 529 (Tex. 1987).

            San Juan contends that there are two versions
of the agreement:  one that was signed by the mayors of both cities (the first
version), and another that was included in the minutes of the Pharr city
council meeting at which the agreement was approved by the council (the second
version).  In the first version, the renewal provision reads as follows:
"This agreement shall be in force and effect for a period of ten years
from the effective date of the agreement at which time the same shall expire if
not renewed and the same shall be renewed at the end of subsequent ten year
periods."  In the second version, the renewal provision reads as follows: 
"This agreement shall be in force and effect for a period of ten years
from the effective date of the agreement at which time the same shall expire if
not renewed at the end of subsequent ten year periods."  Citing Progressive
County Mutual Insurance Company v. Kelley, San Juan argues that the
existence of two competing versions of the agreement creates an ambiguity that
prevents summary judgment.  See 284 S.W.3d 805, 807-08 (Tex. 2009) (per
curiam).  However, Kelley is distinguishable from this case.  

In Kelley, the plaintiff was
injured in an automobile accident.  Id. at 806.  The plaintiff was
insured under a family automobile insurance policy with the defendant that
covered five family cars.  Id.  Four of the family's cars were listed on
one policy document; the fifth car was listed on a separate document.  Id. 
The documents contained separate policy numbers.  Id.  After the
defendant paid the policy limit, the plaintiff attempted to make a claim under
the second policy document, but the defendant denied that there was a second
policy and refused to make additional payments.  Id.  The supreme court
held that "the existence of two documents" created a latent
ambiguity, and the court therefore considered extrinsic evidence before
concluding that the plaintiff had raised a fact issue as to whether the
defendant had issued two insurance policies.  Id. at 807-08.  In other
words, the supreme court held "that the documents are ambiguous as to
whether one or two policies existed."  Id. at 808.

Here, only one version was signed by the
mayors of both cities.  The re-printing of the agreement in the Pharr council
meeting minutes did not create a separate or competing document.  Unlike the
plaintiff in Kelley who possessed two separate documents with two
separate policy numbers and believed that she held two distinct insurance
policies, the parties here do not contend that there were two separate
annexation and ETJ agreements.  In short, we are not persuaded that Kelley
controls our ambiguity determination in this case.

Rather, it is clear that the agreement
between the parties is embodied in the version signed by both mayors.  And we
cannot conclude that the renewal provision contained in that document is
ambiguous.  The provision states that the agreement shall be in force and
effect for ten years from the effective date—i.e., from 1983 to 1993—and then
"shall expire if not renewed."  See Coker, 650 S.W.2d
at 393.  The mandatory nature of this language clearly contemplates that the
parties must take some affirmative action to renew the contract, failing which
it shall expire.  The next phrase regarding subsequent ten-year periods does
not come into play if the parties do not renew the agreement at the end of the
first ten-year period.  Any other construction would render the "shall
expire" mandate meaningless.  See Frost Nat'l Bank, 165
S.W.3d at 312 (holding that we should avoid constructions that render contract
terms meaningless).  And any lack of clarity about "subsequent ten year
periods" does not create an ambiguity here.  See Universal
Health Serv., Inc., 121 S.W.3d at 746.

It is undisputed that neither city took
any action to renew the agreement in 1993.  Thus, we conclude that the
agreement expired in 1993, and the cities' annexation powers became governed solely
by statute from that point forward.  See MCI Telecomms. Corp.,
995 S.W.2d at 651 (holding that interpretation of an unambiguous contract is a
question of law for the court).  As such, at the expiration of the agreement in
1993, Pharr's ETJ expanded to its statutory distance of two miles from Pharr's
city limits.[5] 
See Tex. Loc. Gov't Code Ann.
§ 42.021(a)(3).  It is undisputed that, under this scenario, Pharr's expanded
ETJ would have extended east of I Road and included the land south of San Juan
in which San Juan later annexed property in its 1994, 1996, 1997, and 1998
ordinances.

Based on the foregoing, we conclude that
Pharr conclusively negated San Juan's breach of contract action.  See Diaz,
9 S.W.3d at 803.  The 1983 agreement expired by its own terms in 1993; as a
result, any action taken by Pharr with regard to expanding its city limits and
ETJ was not governed by the agreement from that point forward, so Pharr's 2002,
2003, and 2008 actions could not have breached the 1983 agreement.  The trial
court therefore did not err in granting Pharr's motion for summary judgment on
this ground.  San Juan's third issue is overruled.

B.  Expansion of San
Juan's ETJ under the Local Government Code

 

            Having determined that the 1983 agreement
expired by its own terms in 1993 and that Pharr's ETJ automatically expanded
east of I Road as a result, we now address San Juan's second issue, in which it
argues that by failing to challenge San Juan's 1990s annexation ordinances,
Pharr consented not only to the expansion of San Juan's city limits but also to
the accompanying expansion of San Juan's ETJ around those new annexations. 
Under the rationale of this argument, San Juan's ETJ would have expanded west
of I Road, and both Pharr's 2002-2003 annexations—which annexed property on the
west side of I Road but within San Juan's purportedly expanded ETJ—and Pharr's
2008 annexations east of I Road would have been invalid encroachments into San
Juan's ETJ.  In support of the foregoing, San Juan relies on the version of
local government code section 43.901 in effect at the time of those ordinances
and cases interpreting that earlier version of the statute.  

            When San Juan passed its 1990s annexation
ordinances, section 43.901 of the local government code read as follows:

            A
municipal ordinance defining boundaries of or annexing area to a municipality is
conclusively presumed to have been adopted with the consent of all appropriate
persons if:

 

(1)       two years
have expired after the date of the adoption; and

 

(2)       an
action to annul or review the adoption of the ordinance has not been initiated
in that two-year period.

 

See Act of May 1, 1987, 70th Leg., R.S.,
ch. 149, § 1, 1987 Tex. Gen. Laws
707, 766;[6]
see also City of Murphy v. City of Parker, 932 S.W.2d 479, 480-81 (Tex.
1996) (quoting and interpreting the prior version of section 43.901).  In City
of Murphy v. City of Parker, the Texas Supreme Court concluded that the
phrase "all appropriate persons . . . clearly include[d]
municipalities."  932 S.W.2d at 481.  The supreme court then held that
"the plain language of section 43.901 erects a complete statutory bar to
any challenge of a municipality's annexation ordinance based on lack of
consent."  Id.; see City of Roanoke v. Town of Westlake, 111
S.W.3d 617, 631-32 (Tex. App.—Fort Worth 2003, pet. denied); see also City
of Webster v. City of Houston, No. 14-04-00353-CV, 2005 WL 913813, at *2
(Tex. App.—Houston [14th Dist.] Apr. 19, 2005, no pet.) (mem. op.).

            We believe that the foregoing law and cases
stand for the proposition that a city's annexation—i.e., the expansion
of the city's city limits—into another city's existing ETJ is conclusively
presumed to be valid absent any action by the other city to challenge the
annexation within two years.  Here, it is undisputed that Pharr did not take
any action to challenge the annexations accomplished by San Juan's 1994,
1996, 1997, and 1998 ordinances, and as a result, Pharr is barred from
challenging those annexations today.  See City of Murphy, 932
S.W.2d at 481.  However, by its second issue, San Juan asks us to enlarge this
presumption, and resulting limitations bar, to an annexation ordinance's
expansion of the annexing city's ETJ.  We will not do so, as the statutory
scheme governing ETJ discourages such a result.

            The prior version of 43.901 and City of
Murphy and its progeny do not address the subject of ETJ.  In particular,
we find the title of section 43.901 telling—"Circumstances in which
Consent to Boundaries or Annexation is Presumed."  See
Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 1, 1987 Tex. Gen. Laws 707, 766 (emphasis added); see also Tex. Loc. Gov't Code Ann. § 42.021
(West 2008) (distinguishing between a city's boundaries and its ETJ by
providing that the "extraterritorial jurisdiction of a municipality is the
unincorporated area that is contiguous to the corporate boundaries of the
municipality").  Further, City of Murphy and the cases following it
speak only to the propriety and effect of annexations of land in another city's
extraterritorial jurisdiction.  See City of Murphy, 932 S.W.2d at 482
("After two years, section 43.901 created the conclusive presumption that
Murphy consented to the annexation, and barred any subsequent
challenges." (emphasis added)); City of Roanoke, 111 S.W.3d at 630,
632 (addressing annexation of a certain tract of land and whether the silence
of the city in whose ETJ the annexing city expanded its boundaries amounted to
a conclusive presumption that the annexation was valid); see also City of
Webster, 2005 WL 913813, at *2 (holding that the prior version of section
43.901 "bars a municipality's challenge to another municipality's annexation
of its extraterritorial jurisdiction if not brought within two years")
(emphasis added)).

Other provisions of the local government
code, by contrast, clearly govern the expansion and reduction of ETJ.  For
example, while section 42.022 provides that the ETJ of a city "expands
with [] annexation" consistent with the city's population in accordance
with section 42.021, section 42.022 also provides that a city's expansion of
ETJ "through annexation . . . may not include any area in the existing
extraterritorial jurisdiction of another municipality.  Tex. Loc. Gov't Code Ann. § 42.022(a), (c) (West 2008); see
also id. § 42.021(a) (setting the statutory ETJs of cities depending on
their populations).  With regard to the reduction of ETJ, section 42.023
provides that the "extraterritorial jurisdiction of a municipality may not
be reduced unless the governing body of the municipality gives its written
consent by ordinance or resolution . . . ."  Id. § 42.023 (West
2008).[7]

            As noted above, when the 1983 agreement
between the cities expired in 1993, Pharr's ETJ automatically expanded to
include the land south of San Juan in which San Juan later annexed land by its
1994, 1996, 1997, and 1998 ordinances.  See id. § 42.021(a).  Therefore,
San Juan's expansion of its city limits through those annexations was
accomplished by taking land within Pharr's existing ETJ, which had the effect
of reducing Pharr's ETJ without its written consent.  See City of Roanoke,
111 S.W.3d at 631 (noting that the effect of section 42.023 is that a city may
not annex land that is within another city's ETJ with the other city's written
consent); see also Tex. Loc.
Gov't Code Ann. § 42.023.  And even though, under the prior version of
43.901 and City of Murphy, Pharr cannot challenge the annexations by San
Juan because it did not object within two years, we cannot conclude that Pharr
likewise consented to the further reduction of its ETJ and forfeited any challenges
to that reduction.  In other words, we conclude that any further reduction of
Pharr's ETJ through an expansion San Juan's ETJ around the newly annexed land
was prohibited by the ETJ scheme in the local government code.  See Tex. Loc. Gov't Code Ann. § 42.023. 
Moreover, we conclude that San Juan could not expand its ETJ through the 1990s
annexations because that expansion would have included areas within Pharr's
existing ETJ.  See id. § 42.022(c).

            In sum, Pharr established its right to its
requested declaratory relief as a matter of law.  See Diaz, 9 S.W.3d at
803; see also Tex. R. Civ. P.
166a(c).  San Juan's ETJ did not expand around its 1990s annexations, and Pharr
acted within its rights to pass its 2002, 2003, and 2008 annexation ordinances
because those annexations were within Pharr's existing ETJ.  The trial court
therefore did not err in granting summary judgment on Pharr's remaining grounds
embodied in the trial court's judgment:  that (1) Pharr's current ETJ extends
to three and one-half [] miles from its city limits";[8]
(2) Pharr's current ETJ "extends east of 'I' Road"; and (3) Pharr
"may rightfully annex property within its [ETJ]" subject to the local
government code.[9] 
San Juan's second issue is overruled.[10] 


 

VI. 
San Juan's Motion for Summary Judgment on the 

Validity
of its 1990s Ordinances (Revisited)

 

            Having overruled San Juan's second and third
issues and concluded that the 1983 agreement expired by its own terms in 1993,
Pharr's ETJ automatically expanded at that point, and Pharr's ordinances
annexing land in that expanded ETJ were valid, we now address San Juan's first
issue in which it challenges the trial court's denial of its traditional motion
for summary judgment.  In that motion, San Juan argued that it was entitled to
summary judgment on its request for a declaration that its 1994, 1996, 1997,
and 1998 annexation ordinances were valid and effective.  

            As discussed above, the evidence shows that
San Juan passed seven ordinances in 1994, 1996, 1997, and 1998 annexing land to
its south.  Those ordinances also purported to expand San Juan's ETJ around
those annexations.  Because the 1983 agreement between the cities had expired,
however, the land into which San Juan annexed was Pharr's existing ETJ, and as
a result, we believe that San Juan's 1990s annexations were improper
encroachments into Pharr's ETJ.  See MCI Telecomms. Corp., 995 S.W.2d at
651; see also Tex. Loc. Gov't
Code Ann. §§ 42.022(c), 42.023.  Nonetheless, because Pharr did not
challenge those annexations within two years, the annexations were conclusively
presumed to be valid, and Pharr was thereafter barred from challenging the
validity of the annexations.  See City of Murphy, 932 S.W.2d at 481; see
also Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 1, 1987 Tex. Gen. Laws 707, 766.  But, as
explained previously, Pharr did not forfeit its right to challenge San Juan's
attempts to expand its ETJ.  See Tex.
Loc. Gov't Code Ann. §§ 42.022(c), 42.023.  

Based on the foregoing, we conclude that
San Juan proved as a matter of law that its annexations—and the portions of its
ordinances enacting those annexations—are valid.  See Tex. R. Civ. P. 166a(c).  For this
reason, San Juan's first issue is partially sustained.  San Juan cannot,
however, prove that it was entitled to expand its ETJ around those ordinances,
and we therefore further conclude that the portions of the ordinances
purporting to expand San Juan's ETJ are invalid.  See id.; see also
Diaz, 9 S.W.3d at 803.  For this reason, San Juan's first issue is
partially overruled.

VII.  Conclusion

            We affirm the judgment of the trial court
granting Pharr's motion for summary judgment.  We also affirm the trial court's
denial of San Juan's motion for summary judgment to the extent it was based on
the 1990s ordinances' attempts to enlarge the ETJ of San Juan around its
annexations.  We reverse the trial court's denial of San Juan's motion for summary
judgment to the extent it was based on the annexations in the 1990s ordinances,
and we render judgment that the annexations in those seven ordinances were
valid and effective.  See Dorsett, 164 S.W.3d at 661; FM Props.
Operating Co., 22 S.W.3d at 872.

            

                                                                                                             NELDA
V. RODRIGUEZ

                                                                                                             Justice

 

Delivered
and filed the  

26th
day of May, 2011.









[1] The Honorable Linda Reyna Yañez,
former Justice of this Court, did not participate in this opinion because her
term of office expired on December 31, 2010; therefore, this case, which was
argued before the panel on October 28, 2010, will be decided by the two
remaining justices on the panel.  See Tex.
R. App. P. 41.1(b) ("After
argument, if for any reason a member of the panel cannot participate in
deciding a case, the case may be decided by the two remaining justices.").






[2]
"The extraterritorial jurisdiction of a municipality is the unincorporated
area that is contiguous to the corporate boundaries of the municipality"
and that extends a statutorily-defined distance from those boundaries depending
on the population of the municipality.  Tex.
Loc. Gov't Code Ann. § 42.021 (West 2008).  The purpose of
extraterritorial jurisdiction is "to promote and protect the general
health, safety, and welfare of persons residing in and adjacent to the
municipalities."  Id. § 42.001 (West 2008).





[3]
Because this is a memorandum opinion and the parties are familiar with the
facts, we will not recite them here except as necessary to advise the parties
of the Court's decision and the basic reasons for it.  See Tex. R. App. P. 47.4.





[4]
San Juan also filed a no-evidence motion for summary judgment on the ground
that Pharr could not present any evidence on its statute of limitations
defense.  By this ground, San Juan argued that because Pharr did not challenge
San Juan's 1990s annexation ordinances within two years, Pharr could not prove
its limitations defense.  We do not address this ground, however, because it is
effectively subsumed within San Juan's traditional summary judgment ground.  See
Tex. R. App. P. 47.1.





[5]
The parties do not dispute that Pharr's population at that time entitled it to
two miles of ETJ.  See Tex. Loc.
Gov't Code Ann. § 42.021(a)(3) (providing that a municipality with a
population of 25,000 to 49,999 has ETJ within two miles of its city limits).





[6]
The current version of section 43.901 is the result of a 2001 amendment, which
added the phrase "except another municipality" after "all
appropriate persons."  See Act of May 15, 2001, 77th Leg., R.S.,
ch. 401, § 1, 2001 Tex. Gen. Laws 733,
733-34 (codified at Tex. Loc. Gov't Code
Ann. § 43.901 (West 2008)).  The amendment's effect was to preclude the
conclusive presumption when another municipality failed to challenge an
annexation ordinance.  See Tex.
Loc. Gov't Code Ann. § 43.901. 





[7]
Local government code sections 42.021, 42.022, and 42.023 are currently the
same as they were at the time of San Juan's 1990s annexations.  See Act
of May 1, 1987, 70th Leg., R.S., ch. 149, § 1, 1987 Tex. Gen. Laws 707, 741 (codified at Tex. Loc. Gov't Code Ann. §§ 42.021-.023 (West 2008)).





[8]
The parties do not dispute that Pharr's current population entitles it to this
amount of ETJ.  





[9]
Likewise, the trial court did not err in denying San Juan's partial no-evidence
summary judgment on the validity of Pharr's 2002, 2003, and 2008 annexations as
the evidence conclusively established that Pharr's annexations were within its
existing ETJ.  See King Ranch, Inc. v. Chapman, 118 S.W.3d 742,
751 (Tex. 2003).





[10]
In its second issue, San Juan also asks the Court to "clarify that the ETJ
surrounding San Juan's corporate boundaries, including its annexations, forms
the eastern boundary of Pharr's ETJ."  In other words, if the Court
determines that San Juan's ETJ expanded with its 1990s annexations, that ETJ
would stretch to the Rio Grande River, and as a result, "Pharr cannot
possess ETJ further to the east, because that land is no longer 'contiguous' or
'adjacent' to Pharr's boundaries."  See Tex. Loc. Gov't Code Ann. § 42.021.  However, having
concluded that San Juan's ETJ did not, in fact, expand with its 1990s
annexations, Pharr's ETJ that now surrounds San Juan, consistent with the
statute, is still contiguous to its borders.  We are therefore not persuaded by
San Juan's argument in this regard.